In re: ASBESTOS LITIGATION.

Arthur Fleetwood, 99C–02–278; John Cash, 00C–04–162; John Rigby, 00C–05–045; Dennis Carr, 01C–02–003; William Miller, 00C–05–024; James Desmond, 00C–08–209; James Wilson, 00C–12–224; William Cooper, 86C–08–070E; Billie Chaney, 99C–08–087; Virginia Mason (Charles), 84C–05–145J; George Hill, 97C–08–064; Ella Morris (Samuel), 84C–05–145N; Jackie Donovan, 99C–09–074; Clifford Scruggs, 99C–11–106; Raymond Nack, 98C–05–047; James Williams, 00C–06–047; Conrad Fassel, 00C–11–159; Larry Hollis, 97C–08–128; Charles Fleetwood, 96C–05–266; Leroy Messick, 96C–10–150; Joseph Messick, 95C–03–123; Albert Griffith, 97C–02–220; Paul Hitchens, 97C–10–153; Robert Truitt, 97C–12–019; George Willey, 97C–03–056; Kenneth Miller, 98C–04–123; Freddie Pusey, 94C–01–038; Raymond Peters, 98C–09–007; Lois Lyons, 97C–09–135; Harold Porter, 97C–11–228; Calvin Musser, 88C–09–199; Larry Surricchio, 89C–10–130; Jerome Wells, 89C–10–128; Jack Brasure, 89C–10–129; Edgar Wilson, 90C–05–038; Richard Mccabe, 90C–05–037; Roland Wingate, 90C–07–101; Clark Spicer, 09C–07–102; John Garris, 90C–12–040; Ronald Davidson, 90C–11–222; Parker Turner, 90C–12–039; Robert Steele, 90C–11–221; William West, 91C–04–124; Robert Harding, 91C–04–153; James Reed, 91C–04–125; Claude Marvel, 90C–09–067; Orville Somers, 90C–09–068; Sidney Taylor, 90C–12–139; Alton Scott, 90C–12–1108; Kenneth Marvel, 90C–12–106; Richard Bowdle, 90C–12–107; Leroy Hill, 90C–12–109; Eugene Hastings, 91C–07–251; Donald Hill, 91C–07–259; Ben Peterson, 91C–07–127; Shelly Ewell, 91C–04–046; Woodrow Butler, 91C–07–252; Herman English, 91C–01–153; Thomas Marine, 88C–07–146A; Albert Mcdowell, 89C–05–197; Doris Fernandes, 87C–07–037; Edward Kowalewski, 88C–11–109; Lester Trice, 86C–02–100A; Erman James Bradley, 84C–05–145A; Edward Barto (John Barto), 84C–05–145B; Calvin Collins, 84C–05–145C; Griffin Conley, 84C–05–145D; G. Robert Dickerson, 84C–05–145E; Calvin Foskey, 84C–05–145F; Allen Hickman, Sr., 84C–05–145G; Lloyd Hopkins, 84C–05–145H; Charles Isenberg, 84C–05–145I; Jack Messick, 84C–05–145K; Ulysses Mills, 84C–05–145L; Joseph Moore, 84C–05–145M; Donald Powell, 84C–05–145O; Lewis Powell, 84C–05–145P; Harry Schiff, 84C–05–145R; Joseph Spicer, 84C–05–145S; Andrew H. Bjorson, 85C–05–013; Urias Graham, 85C–11–119A; Granville W. Brittingham, 85C–11–119B; Ernest M. Derrickson, 85C–11–119C; Roy D. James, 85C–11–119D; Hayward Roe, 85C–11–119E; Dale V. Shaffer, 85C–11–119F; Harley G. Watkins, Jr., 85C–11–119G; Dathiette M. Hearn, 86C–06–160; Donald Lowe, 86C–06–070A; Plaintiffs Below, Appellants,

v.

Charles A. Wagner Co., Inc., Defendant Below, Appellee.

C.A. No. 704,2002.

Supreme Court of Delaware.

Submitted: June 16, 2003.
Decided: Sept. 15, 2003.

Thomas C. Crumplar, Esquire (argued) and David A. Arndt, Esquire, of Jacobs & Crumplar, P.A., Wilmington, Delaware, for Appellants.

David C. Malatesta, Jr., Esquire, of Kent & McBride, P.C., Wilmington, Delaware; John F. Kent, Esquire (argued), of Kent & McBride, P.C., Philadelphia, Pennsylvania, for Appellee.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, Justices, constituting the Court en Banc.

VEASEY, Chief Justice.

In this appeal, we hold that plaintiffs who were allegedly injured by asbestos exposure have adduced sufficient evidence to permit a jury to determine whether the defendant, the distributor who sold the asbestos to the plaintiffs' employer, owed a duty to warn the plaintiffs about asbestos hazards. We conclude that the seller cannot avail itself of the "mere supplier" defense set forth in the Restatement (Second) of Torts. That asserted defense pertains only to the duty to inspect manufactured goods, which is not implicated here. It, therefore, is unnecessary for us to decide whether the mere supplier defense would accurately reflect Delaware law in an otherwise applicable context.

As to the plaintiffs' duty to warn claim, we find that the plaintiffs have presented facts from which one can reasonably infer that the defendant, as a sales entity and specialty distributor of industrial minerals, was on notice of the dangers posed by asbestos exposure. A jury must determine whether the defendant knew or should have known of those hazards, given its position in the chain of distribution of the asbestos products.

Finally, we conclude that the Delaware Sealed Container Defense Law[1] does not apply to bar the plaintiffs' claims because the statute was enacted long after the sales of asbestos in this case. Accordingly, we reverse the Superior Court's grant of summary judgment dismissing the complaint. The case is remanded for further proceedings consistent with this opinion.

## Facts

The plaintiffs were allegedly injured from exposure to asbestos while working at a chemical plant in Seaford, Delaware, where short-fibre asbestos was used as a sweeping compound to absorb spills on the plant floor. The owner of the plant, E.I. duPont de Nemours & Co. (DuPont), purchased the asbestos from the defendant, Charles A. Wagner Co., Inc. (Wagner). The plaintiffs, former DuPont employees, claim that Wagner owed a duty to warn them of the dangers posed by asbestos.

Wagner, a Pennsylvania corporation based in Philadelphia, served as a distributor for companies producing various types of minerals, including clay, pumice stone, talc, carbon black, and asbestos. These items were sold to several businesses in Pennsylvania, New Jersey, and Delaware. From the early 1950s until the early 1970s, Wagner was the area distributor for Asbestos Corporation Limited (ACL), a Canadian-based asbestos producer. The raw asbestos DuPont used as a sweeping compound was mined, crushed, dried, and ground into short fibers by ACL. The short-fibre asbestos was sold by ACL to Wagner and various other distributors. DuPont began purchasing asbestos from Wagner in 1958 and continued to buy the product until Wagner stopped carrying asbestos in 1973.

Although the asbestos passed through Wagner's warehouse, the distributor did not alter the product before it reached the Seaford Plant. When Wagner received bags of asbestos from ACL, Wagner placed an additional form on the bags,

1. DEL. CODE ANN. tit. 18, § 7001(b) (2001).

solely to mark the customer's order number and its destination. Occasionally, Wagner had to sew torn bags, or repackage the asbestos that arrived in damaged bags, before shipping the product to the buyer. Over the years, Wagner allegedly sold 38 tons of raw asbestos to DuPont before it stopped carrying asbestos.

### Proceedings Leading to This Appeal

Ninety current and former employees of the Seaford Plant brought actions against Wagner in the Superior Court, alleging that they had contracted various injuries related to their exposure to the sweeping compound. According to plaintiffs, Wagner failed to warn DuPont of the health risks posed by asbestos, failed to offer a substitute material as a sweeping compound, and made material misrepresentations that asbestos was not hazardous.

Wagner initially argued that the plaintiffs' actions could not proceed to trial because the plaintiffs had not produced sufficient evidence from which a rational trier of fact could infer that the asbestos used as a sweeping compound in the Seaford Plant was the same product sold by Wagner. We reversed those decisions, holding that a rational trier of fact could infer "the existence of the necessary nexus between Wagner's product and plaintiffs' injuries."[2] The cases were remanded on August 30, 2002, and the Superior Court scheduled trial in the first action for December 4, 2002.

Less than one month before trial was scheduled to begin, Wagner filed another motion for summary judgment. In that motion it argued that its distribution of asbestos qualified Wagner as a "mere sup-

plier" of manufactured products in accordance with Section 402 of the Restatement (Second) of Torts. That Restatement section provides that a seller does not owe a duty to inspect or test a manufactured product unless the seller knows or has reason to know of a danger. Wagner also argued that the Delaware Sealed Container Defense Law[3] precluded the plaintiffs from recovering.

The Superior Court granted Wagner's motion for summary judgment, holding that Restatement Section 402 applied to the facts of this case and entitled Wagner to judgment as a matter of law.[4] The Superior Court did not address the sealed container defense. The plaintiffs appeal the judgment of the trial court dismissing their claims.

### Issues on Appeal

The plaintiffs contend that the Restatement provision should not be adopted by this Court and, therefore, was erroneously applied to dismiss their claims. Alternatively, the plaintiffs contend that even if Section 402 accurately reflects Delaware law, their claims do not implicate the Section 402 defense. Wagner responds by arguing that, even if Section 402 does not apply to dismiss the plaintiffs' action, the Sealed Container Defense Law entitles Wagner to summary judgment.

### Section 402 of the Restatement (Second) of Torts Does Not Apply to the Plaintiffs' Claims

Section 402 of the Restatement (Second) of Torts relieves a seller of the responsibility either to inspect or test manufactured goods, unless the seller knows or

---

2.  *In re Asbestos Litig.*, Del.Supr. Nos. 361, 483, 474, 2001 (Consolidated), Steele, J. (June 28, 2002) at 5.

3.  DEL. CODE ANN. tit. 18, § 7001(b) (2001).

4.  *In re Asbestos Litig.* (*Hunt, Cash, Nai, Collins,* and *Pyle,* trial groups), 2002 WL 31815818 (Del.Super. Nov. 27, 2002) (hereinafter *S.J. Op.*).

has reason to know that the product poses a hazard to the buyer. Section 402 states:

A seller of a chattel *manufactured* by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the chattel *because of his failure to discover the danger by an inspection or test of the chattel before selling it.*[5]

The plaintiffs urge this Court to reject Section 402 of the Restatement and adopt an independent analysis for a distributor's duty concerning the sale of dangerous products. Even if this Court chooses to adopt Section 402, the plaintiffs contend that the trial court should not have applied that provision in this case because: (a) the asbestos was not "manufactured"; (b) Wagner is not a "seller" for Section 402 purposes; (c) the plaintiffs' claims do not involve the duty to test or inspect the asbestos; and (d) Wagner knew or at least had reason to know of the asbestos hazard.

■■■■ This Court reviews de novo the trial court's decision to apply legal principles to the facts of this case.[6] We hold that Section 402 does not apply to the plaintiffs' claims for at least two reasons: (1) the product at issue here is not a manufactured good; and (2) the plaintiffs' duty-to-warn claim does not arise from an alleged failure to test or inspect the raw asbestos. Given this disposition, we do not reach the issue of whether Section 402

should be adopted as the law of Delaware in an otherwise applicable context.

Section 402 addresses a seller's duties to discover dangers that arise from design or product defects of manufactured goods. Consequently, the Restatement refers to inspection and testing because these duties are the methods by which a seller obtains information about product defects or dangers.[7] The "mere supplier" defense articulated in Section 402 is premised on the unreasonableness of imposing on the distributor the responsibility of testing the conformity of each product manufactured by others to ensure its safety. Where the seller has no knowledge or reason to know of a danger, the risk of harm created by reselling the manufactured product without an inspection is outweighed by the costs of forcing each intermediary to inspect the product that passes through its operations.[8]

The plaintiffs' claims do not implicate the risks and responsibilities addressed in Section 402. The harm that plaintiffs allege does not involve a defect in, or dangerous condition of, a *manufactured* item. Nor do the plaintiffs seek to hold Wagner liable for failing to test or inspect the asbestos. It is not claimed that the asbestos in this case, a non-manufactured product mined from the ground, posed a harm because some bags of ACL asbestos did not conform to proper specifications. The alleged harm arose from the inherently dangerous nature of the asbestos itself.

---

5. RESTATEMENT (SECOND) OF TORTS § 402 (2002) (emphasis supplied).

6. *United Vanguard Fund, Inc. v. Takecare, Inc.*, 693 A.2d 1076, 1079 (Del.1997).

7. The illustrations provided in Section 402 refer specifically to hazards in manufactured goods that created dangers through product defects. *See* RESTATEMENT (SECOND) OF TORTS § 402, illus. 1–3 (discussing cases involving a

defective gas heater, a defective hot water heater, and a defective water bag as examples of a seller's duty to inspect).

8. *See id.* cmt. d ("The burden on the seller of requiring him to inspect chattels which he reasonably believes to be free from hidden dangers outweighs the magnitude of risk that a particular chattel may be dangerously defective.").

Wagner's duty to warn the plaintiffs about asbestos hazards is not premised on an obligation to discover information by testing each bag of asbestos. Rather, the premise is the plaintiffs' claims that Wagner should have disclosed general information at Wagner's disposal about the dangers of asbestos. Alternatively, plaintiffs contend that Wagner should have discovered additional information about asbestos that was allegedly available in the industry.

### The Plaintiffs Have Presented Sufficient Evidence That Wagner Was on Notice That Asbestos Was Dangerous

■ The trial court found that Wagner did not owe the plaintiffs a duty to warn them of the dangers posed by asbestos because Wagner had no reason to believe that its asbestos product was any more dangerous than the other products it carried. Wagner contends that the work-related hazards in its field involve the creation of dust, and that dust from any of Wagner's products poses a risk if workers inhale the dust particles over a long period of time. In our view, however, the plaintiffs have adduced credible evidence from which a rational juror could infer that Wagner was on notice that asbestos posed a hazard to DuPont employees.

Even assuming Wagner knew only that asbestos was hazardous solely because it created dust particles like any other mineral, the plaintiffs have raised a triable issue: namely, whether Wagner should have warned DuPont and its employees of the risks associated with handling dusty

materials. The trial court based its decision partly on the notion that asbestos was not known to pose a danger greater than any of its other products.[9] That fact does not make asbestos any less dangerous to buyers who have less information than Wagner about the hazards of frequent exposure to dust.[10] Indeed, by the 1960s, Wagner required its employees to wear respirators to protect them generally from dust.[11] The defendants have not been able to point to any facts demonstrating that this precaution, or an adequate warning, was ever conveyed to DuPont.

Wagner generally relies on the sophistication of the DuPont company and its reputation for creating a safe work environment as creating the inference that DuPont knew of the dangers presented by inhaling dust. Wagner has presented no facts to support that inference, however. At most, Wagner notes that in 1969 it sent a letter to DuPont advising the company to take the "normal precautions against any dusty material" when handling asbestos.[12] Wagner has not presented any evidence that suggests that DuPont understood "normal precautions" to mean that its employees should have worn respirators. Without facts that lend greater insight into specific safety procedures implemented by DuPont, one cannot rationally infer that Wagner's duty to warn the plaintiffs was discharged simply because the plaintiffs were DuPont employees.

■ A rational trier of fact could find that Wagner was on notice of the particular dangers posed by asbestos. Wagner

---

9.  *S.J. Op.* at *3–4.

10. *See In re Asbestos Litig. (Mergenthaler)*, 542 A.2d 1205, 1212 (Del.Super.1986) (noting that a seller is relieved of a duty to warn only when the seller knows or reasonably believes the purchaser is aware of the danger).

11. Deposition of Edward Rabon 78 (June 13, 1989).

12. Appendix to Appellant's Opening Brief at A2.

contends that it could not have warned DuPont of any dangers peculiar to asbestos unless it had inquired into the hazardous nature of asbestos. Wagner asserts that a supplier that is "nothing more than a mere conduit" between the producer and consumer has no duty to inquire into the dangers of its product.[13] According to Wagner, a supplier owes a duty to warn only when it has reason to know of the dangers. In contrast to a manufacturer, which is held responsible for information that it should have discovered,[14] a "mere conduit" supplier that did not introduce the product into the market is not expected to gather information that a producer or manufacturer should have known about the potential hazards.

The record demonstrates, however, that Wagner was not a "mere conduit" of ACL's asbestos. Wagner did not merely ship the asbestos to the Seaford Plant. As Wagner's former president described the business, Wagner acted as a "salesman" and "agent" for its suppliers.[15] Wagner often purchased the asbestos from ACL and then marketed and sold its inventory to interested consumers.[16] Even on occasions where ACL shipped an order directly to DuPont, Wagner received a commission for the sale.[17]

Because Wagner was more than a "mere conduit" of the asbestos, we cannot conclude, as a matter of law, that Wagner owed its purchasers no duty to avail itself of information about asbestos hazards that was available in the industry. Wagner's distribution business required familiarity with industry literature and a responsibility to become informed of known industry hazards. Wagner's former president, Edward Rabon, noted that Wagner had acquired knowledge about the particular hazards of another one of its products, silica, through public materials available in the industry literature.[18] Rabon also disclosed that Wagner subscribed to several industry periodicals, including *Chemical Week*, which in 1965 featured an article that raised questions about the safety of using asbestos.[19] A fact finder could rationally conclude that Wagner performed, or should have performed, a similar inquiry to keep abreast of the industry-known dangers of asbestos as it had with its silica products.

Wagner also had an obligation to familiarize itself with state and federal regulations that questioned the safety of using asbestos. In 1971, the federal government listed asbestos dust as a work-related hazard.[20] As early as 1947, Pennsylvania also listed asbestos exposure as a compensable work-related injury.[21] Although Wagner responds that the federal and state regulations stated that dust particles are generally hazardous, regardless of their source, those regulations specifically mention asbestos exposure as a hazard apart from

---

13. *See generally Eagle–Picher Indus., Inc. v. Balbos*, 326 Md. 179, 604 A.2d 445, 456 (1992); American Law of Prods. Liability 3d, § 32:81 Nonmanufacturing suppliers (May 2003).

14. *See In re Asbestos Litig.*, 799 A.2d 1151, 1152 (Del.2002).

15. Deposition of Edward Rabon 8 (June 13, 1989).

16. *Id.* at 26.

17. *Id.* at 21.

18. *Id.* at 88–90.

19. *Asbestos: Awaiting "Trial,"* CHEMICAL WEEK, Sept. 10, 1965, at 32.

20. Occupational Safety and Health Standards, 37 Fed.Reg. 11318 (June 7, 1972).

21. Pennsylvania Occupational Disease Act, art. I, § 108(*l*) (1947).

other types of dust.[22] This information creates a jury question because, while Wagner may not have actually known that information, it was on notice of the potential dangers of asbestos.

Wagner's specific relationship with DuPont also may have placed it on notice of asbestos hazards and imposed on Wagner a duty to discover additional facts about the dangers involved. According to the plaintiffs, Wagner, not ACL, marketed the raw asbestos as suitable for the sweeping compound that DuPont required for the Seaford plant. In 1969, DuPont sent a letter to Wagner stating that DuPont was reevaluating its safety procedures and specifically solicited any additional information from Wagner concerning the fire and explosives hazard, toxicity, or the "existence of unusual hazards pertaining to the product." Although Wagner now contends that any such information would need to be provided by ACL, Wagner sent a response to DuPont two days after the initial request, stating that its asbestos did not present a hazard and was "non-toxic," requiring "only normal precautions against any dusty material need be exercised."[23] The plaintiffs have adduced sufficient evidence to create a reasonable inference that Wagner made a representation about the non-toxicity of its product. Thus, a jury could rationally conclude that Wagner should have inquired into the dangers of asbestos before warranting its safety.

Finally, in 1970, twelve years after Wagner began selling ACL's asbestos, ACL sent a letter to Wagner informing its distributors that it intended to place a caution label on all future asbestos shipments. The caution label stated, "This bag contains chrysotile asbestos fibre. Persons exposed to this material should use adequate protective devices as inhalation of this material over long periods may be harmful."[24] That caution, which Wagner's former president characterized as an "unusual" communication from ACL, also served as an additional event that placed Wagner on notice of a developing awareness in the industry of the dangers posed by asbestos.

Wagner exposed its employees to asbestos, sought out buyers for its product, and made representations about the safety of the product. As the Court of Appeals of Maryland has stated when addressing a similar case, a trier of fact could conclude that an entity exercising reasonable care under these circumstances would "keep abreast of the literature on asbestos."[25] The plaintiffs have presented facts from which a rational juror could infer that Wagner was on notice of the dangers of asbestos and owed the plaintiffs a duty to warn them either of the general dangers of handling material producing dust or of the more specific asbestos hazards of which the industry was becoming aware during the period that DuPont used Wagner's sweeping compound.

22. Occupational Safety and Health Standards, 37 Fed.Reg. 11318 (June 7, 1972); Pennsylvania Occupational Disease Act, art. I, § 108(*l*) (1947).

23. Appendix to Appellant's Opening Brief at A2.

24. *Id.* at A3.

25. *Balbos,* 604 A.2d at 457. The defendant in *Balbos* both distributed and installed asbestos products in the shipyard where the plaintiffs

were exposed to asbestos. Although the claim did not involve the negligent installation of asbestos, the Court of Appeals of Maryland upheld the trial court's decision to instruct the jury to determine the information the defendant "should have known" because the defendant, as an installer and distributor of the asbestos product, would be expected to access information in the industry about asbestos and its hazards. *Id.*

### The Sealed Container Defense Law Is Not Available to Wagner

■ In its alternative argument, Wagner contends that it is entitled to summary judgment against the plaintiffs in accordance with Title 18, Section 7001 of the Delaware Code, the Sealed Container Defense Law. Section 7001 provides in part:

It shall be a defense to an action against a seller of a product for property damage or personal injury allegedly caused by the defective design or manufacture of a product if the seller establishes that:

(1) The product was acquired and then sold or leased by the seller in a sealed container and in an unaltered form;

(2) The seller had no knowledge of the defect;

(3) In the performance of the duties the seller performed or while the product was in the seller's possession could not have discovered the defect while exercising reasonable care;

(4) The seller did not manufacture, produce, design or designate the specifications for the product, which conduct was the proximate and substantial cause of the claimant's injury;

(5) The seller did not alter, modify, assemble or mishandle the product while in the seller's possession in a manner which was the proximate and substantial cause of the claimant's injury; and

(6) The seller had not received notice of the defect from purchasers of similar products.[26]

Wagner argues that it is a seller of manufactured goods in a sealed container and, as such, is entitled to the protections afforded by Section 7001. The plaintiffs counter by arguing that Wagner does not meet the requirements to qualify for the Section 7001 defense. We need not decide generally whether Wagner qualifies as a supplier entitled to the Section 7001 defense, because the statute was enacted several years after the alleged wrongful conduct occurred.

Wagner contends that Section 7001 applies to every claim against the distributor that was filed after the statute became effective in June of 1987. Were this Court to apply Section 7001 as of the date an action is filed, however, the Sealed Container Defense Law would produce arbitrary results. Each plaintiff in this case was exposed to asbestos no later than 1973, fourteen years before Section 7001 became the law of Delaware. The time in which each plaintiff filed his or her action varied only because the asbestos exposure led to different latent diseases that developed at different times in each of the plaintiffs. Wagner cannot assert a viable defense against some plaintiffs but not others simply because some plaintiffs did not discover their injuries until after 1987.

■ We conclude that the Sealed Container Law is more appropriately construed as applying to all sales that occurred after the statute's 1987 enactment rather than applying the defense to all claims filed after 1987. A plaintiff should not be barred from presenting a claim to a jury simply because the statute was enacted before the injury was discovered. Because the statute offers sellers a defense that did not exist at common law, we must construe the defense strictly against the party it benefits.[27] A strict construction of Section 7001 requires us to apply the statute's effective date to the time of the alleged wrongful conduct, regardless of

26. DEL. CODE ANN. tit. 18, § 7001(b) (2001).

27. *See Tyler v. Dworkin*, 747 A.2d 111, 125 (Del.Super.1999) (citing *Stratford Apartments v. Fleming*, 305 A.2d 624, 626 (Del.1973)).

when the plaintiffs discovered that conduct.

### Conclusion

We reverse the judgment of the Superior Court and remand this case for further proceedings consistent with this opinion.