Thomas C. CRUMPLAR,
Esquire, Appellant,

v.

The SUPERIOR COURT of the State
of Delaware in and for NEW
CASTLE COUNTY, Appellee.

Nos. 643, 2011, 644, 2011.

Supreme Court of Delaware.

Submitted: Aug. 15, 2012.
Decided: Oct. 22, 2012.

Thomas S. Neuberger and Stephen J. Neuberger, The Neuberger Firm, P.A., Wilmington, Delaware; Edward N. McNally (argued), Morris James LLP, Wilmington, Delaware, for appellant.

Ralph K. Durstein (argued), Edward K. Black and Thomas E. Brown, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the Court en Banc.

PER CURIAM:

Attorney Thomas Crumplar appeals a Superior Court judge's sanctions under Superior Court Civil Rule 11. We affirm the Superior Court's holding that an objective standard should govern a determination of whether Rule 11 has been violated.

We also extend *In re Infotechnology, Inc.*[1] to bar judges from sanctioning attorneys except where the attorney's conduct prejudicially disrupts the administration of justice in a particular case. Finally, we require that judges conduct a hearing before imposing sanctions on their own motion. Therefore we **AFFIRM** in part and **REVERSE** in part the Order imposing sanctions and **VACATE** the sanctions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The First Order to Show Cause: Supplying the Wrong Case Name for a Correct Proposition

A Superior Court judge issued to attorney Thomas Crumplar two orders to show cause under Superior Court Civil Rule 11. The judge did that on her own initiative. The First Order to show cause concerned Crumplar's representations to the court in an asbestos lawsuit in which he represented Joseph Turchen. The defendant in that case, County Insulation, had moved for summary judgment focused on the argument that Turchen could not show a nexus between its product and the decedent. In one argument made in response to the motion, Crumplar stated:

> County did work in a neighboring building. This Court in [*McNulty*] found this nexis [sic] sufficient for purposes of summary judgment. Plaintiff has no transcript of the hearing on Summary Judgment and so can only rely on the foregoing statements offered by counsel *as officers of the Court.*[2]

After County Insulation's counsel responded that *McNulty* settled before the court could decide the motion Crumplar referenced, the trial judge issued the First Order. She noted that the "circumstances raise at least a possibility that [Crumplar] may have misrepresented [*McNulty's* events] in an attempt to fabricate a ruling in support of [his] position."[3]

In response to the First Order, Crumplar stated that he had a "distinct recollection" that his firm had prevailed against County Insulation "on a Product ID summary judgment ... arising out of exposure at the Avisun/Amoco polymer/film plant."[4] To find the case "everyone was so certain we won on Summary Judgment," Crumplar consulted his staff and incomplete records.[5] Crumplar discovered the brief his firm had filed in *McNulty*, which seemed to corroborate his recollection. He also determined that *McNulty* had settled the same day as the summary judgment hearing, further supporting his recollection. Based on these records and his consultation with his staff, Crumplar thought *McNulty* was the correct case. In fact, Crumplar was mistaken. Although he admitted that it appeared *McNulty* had settled before the Court heard the summary judgment motion, Crumplar still believed a case existed that supported the proposition he had attributed to *McNulty*, although he had not located the name of that case by the time he responded to the First Order. Two days later, Crumplar notified the judge that he had contacted County Insulation's counsel, and with her help he discovered that the name of the case he

---

1. 582 A.2d 215, 218 (Del.1990).

2. *In re Asbestos Litig. (Turchen)*, 2011 WL 5344308, at *3 (Del.Super. Oct. 28, 2011) (quoting Pls.' Resp. to Def. County Insulation's Mot. Summ. J. 6) (emphasis added by Superior Court). Crumplar was referring to *McNulty v. Anchor Packing Co.*, CA. No. 03C–11–116 (Del.Super.Nov.13, 2003).

3. *In re Asbestos Litig. (Turchen)*, C.A. No. 09C–11–059, at 7 (Del.Super. July 11, 2011).

4. App. to Opening Br. A416.

5. *Id.*

should have originally cited was *Opalczyn-ski*.[6]

### B. The Second Order to Show Cause: Failing to Distinguish Precedent

The Second Order to show cause concerned briefs Crumplar filed in opposition to a different motion for summary judgment relevant to *Turchen* and to claims involving harm to Gerald Johnston. Three previous Superior Court cases had already resolved the issue presented on the motion. The question was whether McArdle-Desco Corporation owed a duty to warn of dangers arising from asbestos-containing products it did not manufacture. The earlier cases held that because McArdle-Desco had acted as a supplier during the relevant time period, it did not have the heightened duty borne by product installers or manufacturers. The Superior Court judge took issue with Crumplar's failure to distinguish these cases, even though opposing counsel had raised them. The judge stated:

> Here, Plaintiffs' counsel disregarded "existing law," and the Court therefore cannot discern what "nonfrivolous arguments" might have been made therefrom to support their position. Not only were the Court's decisions in *Rotter, Dieterle* [sic], and *Weber* not raised in either of Plaintiffs' submissions, but Plaintiffs' counsel presented arguments identical to those rejected by Judge Ba-

biarz in his decisions without any acknowledgement or explanation of those rulings.[7]

In response to the Second Order, Crumplar denied that Rule 11 imposed a duty to cite contrary authority if that authority had already been raised by the other party.[8]

### C. The Sanctions Opinion

After finding that Crumplar had failed to show cause why he should not be sanctioned, the Superior Court judge imposed a $25,000 penalty. Relying on Superior Court Civil Rule 11(b), the judge imposed the monetary sanction based on the First Order, but devoted a large portion of her opinion to the Second Order as well.[9] After conceding that the $25,000 sanction might appear "arbitrarily excessive," the judge justified the amount by noting that asbestos settlements and verdicts were "typically in the millions of dollars" and contingency fees were "often as high as 40 percent."[10] The judge stated that "the propriety of the Court's sanctions becomes self-evident" in the context of the severe burden imposed by the asbestos litigation docket.[11] The sanctions also rested on a crucial factual finding:

> It is against this backdrop that the Court is called upon to apply Rule 11 sanctions for conduct that amounts to an

---

6. *In re Asbestos Litig. (Opalczynski)*, CA. No. 04C-03-264 (Del.Super. Oct. 25, 2006) (TRANSCRIPT).

7. *In re Asbestos Litig. (Johnston)*, C.A. No. 09C-07-128, at 4 (Del.Super. July 21, 2011).

8. Crumplar also argued that our intervening opinion in *Fleetwood v. Charles A. Wagner Co., Inc.*, 832 A.2d 705 (Del.2003), was the controlling law. *Turchen*, 2011 WL 5344308, at *7.

9. The Superior Court judge based the monetary sanctions entirely on the First Order,

because the case underlying the Second Order had settled before the court issued the order, and therefore was an improper basis for a *sua sponte* sanctions award. Super. Ct. Civ. R. 11(c)(2)(B). The judge referred the conduct underlying the Second Order to the Office of Disciplinary Counsel. *Turchen*, 2011 WL 5344308, at *8.

10. *Turchen*, 2011 WL 5344308, at *9.

11. *Id.* at *1.

attorney's efforts to mislead the Court and to take advantage of the vast amount of reading generated by the high volume of the asbestos cases in the hopes that distortions of law and fact might be overlooked.[12]

On appeal, Crumplar argues that the Superior Court judge erred by applying an objective standard to determine a Rule 11 violation, and that even if an objective test applies, the Superior Court judge abused her discretion by finding Crumplar had violated the standard. Second, Crumplar argues that the Superior Court judge denied him due process by making credibility determinations and imposing monetary sanctions without holding an evidentiary hearing or allowing him to respond personally at an oral argument. In response, the Superior Court argues that the judge proceeded properly and applied the correct standard while imposing Rule 11 sanctions.

## II. STANDARD OF REVIEW

We review questions of law *de novo,* and therefore independently determine what process Rule 11 demands.[13] The legal issue on which we focus is whether an objective or subjective test applies to a review of attorneys' conduct. We review decisions to impose sanctions for an abuse of discretion.[14]

## III. DISCUSSION

### A. Superior Court Civil Rule 11

Superior Court Civil Rule 11(c) provides a trial judge with authority to impose an "appropriate sanction" on attorneys who violate Rule 11(b), but only after notice

and a reasonable opportunity to respond.[15] In turn, Rule 11(b) informs attorneys of the standards that will be applied to documents they file with the court:

> By representing to the Court ... a ... written motion ... an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

> ... (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.... [16]

### B. Should Judges Apply an Objective or a Subjective Standard to Attorney Conduct when Considering Imposing Rule 11 Sanctions?

The first question is whether the Superior Court judge should have evaluated Crumplar's conduct under an objective or a subjective standard. That is, when deciding whether Rule 11 sanctions are appropriate, should the judge consider an attorney's internal belief to determine whether he performed an inquiry reasonable under the circumstances, or should the judge measure the reasonableness of

12. *Id.*

13. *Plummer v. Sherman,* 861 A.2d 1238, 1242 (Del.2004).

14. *Gooch v. Bradley Eaby & Barros,* 718 A.2d 527, 1998 WL 515345, at *2 (Del. June 26, 1998).

15. Super. Ct. Civ. R. 11.

16. *Id.*

the attorney's inquiry against objective criteria?

Our trial courts appear either divided or inconsistent on whether Rule 11 requires an objective or a subjective test.[17] In the 1973 case of *Singer v. Creole Petroleum Corp.*, we interpreted the then-operative version of Court of Chancery Rule 11's "good ground" requirement as establishing a test based on the "good faith of the attorney in signing the pleading."[18] After *Singer* was decided, the Federal Rules of Civil Procedure were amended, and parallel changes were made in both the Superior Court Civil Rules and the Court of Chancery Rules.[19]

Before the amendment, Rule 11 stated: "[t]he signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is *good ground* to support it; and that it is not interposed for delay."[20] After the amendment, Rule 11 read:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge,

information, and belief *formed after reasonable inquiry* it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law....[21]

In *Hurst v. General Dynamics Corp.*, the Vice Chancellor noted that no Delaware cases had interpreted the new language.[22] He cited federal cases to hold that the "reasonable inquiry" language of the revised Court of Chancery Rule 11 created an objective standard.[23]

In *Fort Howard Cup Corp. v. Quality Kitchen Corp*, the Superior Court continued to apply a subjective standard without analyzing the revised language.[24] Later cases cited *Fort Howard* as holding that the standard for determining whether conduct has violated Rule 11 was a subjective good-faith test.[25] *Abbott v. Gordon*, a 2008 decision the judge in this case relied upon, was the first Superior Court case to apply an objective test.[26] *Abbott* held without citation that the "duty is one of reasonableness under the circumstances, and a subjective good faith belief ... does not alone satisfy the requirements of Rule

---

17. *Compare Coverdale v. Fisher*, 1993 WL 487911, at *5 (Del.Super. Nov. 8, 1993) ("The Superior Court has imposed a subjective good faith test in considering Rule 11 motions."), *with ASX Inv. Corp. v. Newton*, 1994 WL 178147, at *2 (Del.Ch. May 3, 1994) ("The attorney's duty is one of reasonableness under the circumstances; a subjective good faith belief in the legitimacy of a claim does not alone satisfy the requirements of [Court of Chancery] Rule 11.").

18. *Singer v. Creole Petroleum Corp.*, 311 A.2d 859, 863 (Del.1973).

19. *See* Super. Ct. Civ. R. 11 (1948) (amended 1984); Ct. Ch. R. 11 (1947) (amended 1984).

20. Super. Ct. Civ. R. 11 (1948) (amended 1984) (emphasis added).

21. Super. Ct. Civ. R. 11 (1984) (amended 1989) (emphasis added).

22. *Hurst v. General Dynamics Corp.*, 583 A.2d 1334, 1342, 1342 n. 12 (Del.Ch.1990).

23. *Id.* at 1342 (collecting cases).

24. *See* 1991 WL 18003, at *3 (Del.Super. Feb. 1, 1991).

25. *See e.g., Ford v. Bank of Delaware*, 1992 WL 423830, at *2 (Del.Super. Dec. 8, 1992) (citing *Fort Howard Cup Corp. v. Quality Kitchen Corp.*, 1991 WL 18003 (Del.Super. Feb. 1, 1991)).

26. 2008 WL 821522, at *25 (Del.Super. Mar. 27, 2008), *aff'd*, 957 A.2d 1 (Del.2008).

11." [27]

■ Given the division within the Superior Court and between that Court and the Court of Chancery, we consider interpretations of the Federal Rules of Civil Procedure by other courts to guide our analysis. Although the Federal Rules of Civil Procedure do not apply in Delaware courts, Superior Court Civil Rule 11 closely tracks the language of Federal Rule 11; therefore, interpretations of the Federal Rules provide persuasive guidance. [28] The Advisory Committee Note to the 1983 Amendments to the Federal Rules of Civil Procedure states that the previous version of Federal Rule 11 was ineffective and that the new Federal Rule 11 therefore provided a standard of "reasonableness under the circumstances" that is "more stringent than the original good-faith formula." [29] This indicates that the drafters of Federal Rule 11—which Superior Court Civil Rule 11 substantially parallels—intended to eliminate the subjective good-faith standard.

Judicial construction of Federal Rule 11 further supports that view. In *Eastway Construction Corp. v. City of New York*, which the Court of Chancery cited in *Hurst*, [30] the Second Circuit noted that before 1983, Rule 11 spoke in subjective terms. [31] The court reasoned that "[t]he addition of the words 'formed after a reasonably inquiry'" demanded a revision of the standard. [32] The court held that the rule "imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed" and that subjective good faith no longer protected attorneys. [33]

The Second Circuit's construction of the amendments to Federal Rule 11 is persuasive. Although a later amendment to Superior Court Civil Rule 11 changed the language "formed after reasonable inquiry" to "formed after an inquiry reasonable under the circumstances," [34] we do not interpret that modification to resurrect a subjective standard. *Fort Howard*—the unreported Superior Court opinion which established a subjective standard—neither accounted for Rule 11's amendment nor cited any authority for the subjective stan-

27. *Id.*

28. *Apartment Communities Corp. v. Martinelli*, 859 A.2d 67, 70–71 (Del.2004) (citing *Canaday v. Superior Court*, 119 A.2d 347, 352 (Del. 1955)). Superior Court Civil Rule 11 is not an exact copy of Federal Rule 11, however, the relevant language—"an inquiry reasonable under the circumstances"—is identical to the federal rule. *Compare* Fed.R.Civ.P. 11, *with* Super. Ct. Civ. R. 11.

29. Fed.R.Civ.P. 11, Advisory Committee Note, 1983 Amendments.

30. *Hurst v. General Dynamics Corp.*, 583 A.2d 1334, 1342 (Del.Ch.1990) (citing *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)).

31. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985), *cert. denied*,

484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). A Second Circuit panel later held, over a spirited dissent, that the subjective standard should apply to court-initiated Federal Rule 11 sanctions proceedings initiated long after the attorney could amend or withdraw the submission. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 91–92 (2d Cir.2003). The Second Circuit's interpretation has not been followed by other circuits, however, and the Superior Court judge did not wait an unduly long period before issuing the orders to show cause. *See Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 40 (1st Cir.2005) (noting that the *Pennie* decision has not been followed by other federal circuits).

32. *Eastway*, 762 F.2d at 253 (quoting Fed. R.Civ.P. 11 (1983) (amended 1987)).

33. *Id.*

34. *See* Super. Ct. Civ. R. 11.

dard.[35] *Fort Howard* does not persuade us that any basis for a subjective standard exists in the current text of Rule 11.

Judges in all Delaware trial courts should determine whether an attorney should be sanctioned under Rule 11 under an objective standard. Delaware demands more from attorneys than pure hearts and empty heads. We therefore adopt the test employed in cases such as *Abbott v. Gordon,*[36] *Fairthorne Maintenance Corp. v. Ramunno,*[37] and *ASX Investment Corp. v. Newton:*[38] the attorney's duty is one of reasonableness under the circumstances; an attorney's subjective good-faith belief in the propriety of his actions does not alone satisfy Rule 11. We hereby overrule the cases endorsing a subjective good-faith test, as exemplified by *Fort Howard Cup Corp. v. Quality Kitchen Corp.*[39]

## C. Did Crumplar's Conduct Meet the Objective Standard?

Because Crumplar's behavior satisfied the objective standard, we hold that the Superior Court judge abused her discretion by imposing sanctions. With regard to the First Order, Crumplar distinctly recalled that a case existed where he had won a summary judgment motion on weaker facts than those presented in *Turchen.* Before he identified that case to the court as *McNulty,* Crumplar consulted his staff, who were also certain the case existed. *McNulty* and *Opalczynski* were very similar cases involving plaintiffs who did not work at the alleged site of the asbestos source. The case (whatever its name) settled the same day as the summary judgment hearing, which Crumplar reasonably inferred probably resulted from a favorable ruling. Because the Superior Court does not maintain a publicly available database of summary judgment motions, Crumplar followed a procedure that may be typical in asbestos litigation. The fact that he named the case incorrectly does not make his inquiry unreasonable, especially given *Opalczynskr's* existence— a case that stands for the very point Crumplar sought to make.

Crumplar's discovery of the correct case name after a conversation with opposing counsel—a fact the Superior Court judge believed illustrated Crumplar's shortcomings—does not indicate that his initial investigation fell short of reasonableness. At the time Crumplar cited *McNulty,* both he and his staff believed *McNulty* to be the correct case. In these circumstances, no reasonable attorney would have called another attorney, especially not opposing counsel, to confirm what he and his staff reasonably believed.

Nor did Crumplar violate Rule 11's objective standard by failing to discuss three cases the Superior Court judge held were directly on point and contrary to his clients' position. The trial judge abused her discretion by finding otherwise. An attorney who fails to respond directly to an opponent's citation of contrary Superior Court cases does not *ipso facto* face Rule 11 sanctions.[40] It is not a Rule 11(b)(2)

---

**35.** *Fort Howard Cup Corp. v. Quality Kitchen Corp.,* 1991 WL 18003, at *3 (Del.Super. Feb. 1, 1991).

**36.** *Abbott v. Gordon,* 2008 WL 821522, at *25 (Del.Super. Mar. 27, 2008) *aff'd,* 957 A.2d 1 (Del.2008).

**37.** *Fairthorne Maint. Corp. v. Ramunno,* 2007 WL 2214318, at *10 (Del.Ch. July 20, 2007).

**38.** *ASX Inv. Corp. v. Newton,* 1994 WL 178147, at *2 (Del.Ch. May 3, 1994).

**39.** *Fort Howard,* 1991 WL 18003, at *3.

**40.** Of course, an attorney would violate the Delaware Lawyers' Rules of Professional Conduct if opposing counsel had failed to cite controlling precedent. Del. Lawyers' Rules of

violation to offer the same arguments that a Superior Court judge found unpersuasive in previous cases. So long as those arguments are "nonfrivolous," they may convince a judge to rule differently in the case at bar. The practice of law imposes many informal penalties on attorneys who do not make thorough arguments. Rule 11 sanctions are not among them.

## D. When May a Trial Judge Properly Sanction a Party Under Rule 11?

An additional, independent reason for vacating the sanctions imposed here is that the sanctions appear to be based on the judge's concern that the behavior she found problematic in these particular cases would cause her problems in *future* cases. The Superior Court judge's heavy emphasis on the high volume of cases as support for the reasonableness of the sanctions suggests that the court relies on attorneys' representations, and would face an even greater burden in the future if required to double check every representation made by Crumplar.

This Court has previously articulated the limits of a trial judge's ability to enforce the Delaware Rules of Professional Conduct. In *In re Infotechnology, Inc.* we examined whether a nonclient litigant (*i.e.*, a client who had not previously been represented by opposing counsel) had standing to argue that its opposing counsel should be disqualified because of a conflict of interest that violated the Rules of Pro-

fessional Conduct.[41] The trial judge in *Infotechnology* held that there was no threat to the fairness of the proceeding, but still disqualified the law firm.[42] We reversed, and required that for disqualification to be appropriate, the litigant must show that the conflict prejudiced the fairness of the proceeding, not merely that a violation of the Rules had occurred.[43]

■ Our holding was based on this Court's exclusive power to supervise the practice of law in Delaware and to enforce the Delaware Lawyers' Rules of Professional Conduct.[44] Absent conduct that prejudicially disrupts the proceeding, trial judges have no independent jurisdiction to enforce the Rules of Professional Conduct.[45] Trial judges may pursue their concerns in deterring future troublesome conduct by reporting attorneys to the Office of Disciplinary Counsel where the facts merit the referral.[46]

■ Although *Infotechnology* did not involve a Rule 11 sanction, the trial judge's actions in this case raise identical concerns. If a trial judge believes an attorney has committed misconduct, referral to the Office of Disciplinary Counsel, not Rule 11 sanctions, is the proper recourse in the absence of prejudicial disruption of the proceeding. For these reasons, we today extend the principle first announced in *Infotechnology*:

> While we recognize and confirm a trial court's power to ensure the orderly and

Prof'l Conduct R. 3.3(a)(2). That was not the case here, however, and Rule 11 sanctions cannot be a means for policing compliance with the Rules of Professional Conduct.

**41.** *In re Infotechnology, Inc.*, 582 A.2d 215, 218 (Del.1990).

**42.** *Id.* at 216.

**43.** *Id.* at 221. In *In re Estate of Waters*, we held that the necessary prejudice had been

shown when an attorney was both trial counsel and a necessary witness in a probate proceeding. *In re Estate of Waters*, 647 A.2d 1091, 1097–98 (Del.1994) (citing *Infotechnology*, 582 A.2d at 221–22).

**44.** *Infotechnology*, 582 A.2d at 216–17.

**45.** *Id.* at 221.

**46.** *See id.* at 220.

fair administration of justice in matters before it, including the conduct of counsel, the Rules may not be applied in extra-disciplinary proceedings solely to vindicate the legal profession's concerns in such affairs. Unless the challenged conduct prejudices the fairness of the proceedings, such that it adversely affects the fair and efficient administration of justice, only this Court has the power and responsibility to govern the Bar, and in pursuance of that authority to enforce the Rules for disciplinary purposes.[47]

Our holding is not intended to leave a judge confronted with an attorney's problematic behavior without recourse. The Office of Disciplinary Counsel is well equipped to investigate attorneys and recommend appropriate action.[48] Referral to the Office of Disciplinary Counsel, an agency of this Court, is consistent with the principle that this Court alone has the inherent and exclusive responsibility for disciplining members of the Delaware Bar.[49] This extension of *Infotechnology* prevents wasteful, duplicative, and potentially inconsistent enforcement of the Rules of Professional Conduct.

Crumplar's incorrect case citation for an otherwise accurate statement, in a single paragraph of a response to a motion he nevertheless lost, did not adversely affect the integrity of the proceeding. The rec-

ord does not support the judge's finding that it "tainted the fairness and efficiency of the adversarial process." [50] Crumplar's mistake resulted in some unnecessary confusion, but his ultimate argument was fairly grounded and his statement did not prejudice his opponent or "the fairness of the proceeding." Similarly, Crumplar's failure to discuss or distinguish the Superior Court authority raised in his opponent's motion for summary judgment did not adversely affect the proceedings, because both cases settled before the judge decided the motion. This case contrasts with cases such as *Fairthorne Maintenance,* where the Vice Chancellor sanctioned a defendant for burdening the plaintiff and the court by raising factually baseless counterclaims and affirmative defenses, in some cases without citing any authority whatsoever for the claim.[51]

## E. What Process Does Rule 11 Require?

 As the Superior Court judge noted, raising Rule 11(c) *sua sponte* is an extraordinary action.[52] The seriousness of a Rule 11 violation is illustrated by subsection 11(c)'s language, which allows the Superior Court to impose sanctions only "after notice and a reasonable opportunity to respond." [53] Crumplar argues that the judge's actions violated his right to due process, and he grounds his contentions in several federal decisions.[54] While we de-

---

**47.** *Id.* at 216–17; *see also Waters,* 647 A.2d at 1098 (citing *Infotechnology,* 582 A.2d at 222).

**48.** *See* Supr. Ct. R. 64(e) (describing the powers and duties of the Office of Disciplinary Counsel).

**49.** *In re Reardon,* 759 A.2d 568, 575 (Del. 2000) (citing *In re Green,* 464 A.2d 881, 885 (Del.1983)).

**50.** *In re Asbestos Litig. (Turchen),* 2011 WL 5344308, at *9 (Del.Super. Oct. 28, 2011); *cf. Waters,* 647 A.2d at 1097–98 (holding that

prejudice existed when an attorney was both the trial counsel and a necessary witness).

**51.** *Fairthorne Maint. Corp. v. Ramunno,* 2007 WL 2214318, at *11 (Del.Ch. July 20, 2007).

**52.** *Turchen,* 2011 WL 5344308, at *9.

**53.** Super. Ct. Civ. R. 11.

**54.** *See, e.g., Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350, 1359 (3d Cir.1990) (mandating, in some situations, "an evidentiary hearing to resolve disputes of material fact when

cline to reach Crumplar's constitutional claim, we do hold that Rule 11(c)'s plain language requires a more refined process than he received.

Rule 11(c)(1)(B) requires the trial court to "enter an order describing the specific conduct that appears to violate" Rule 11(b) when the court raises Rule 11 on its own initiative.[55] The trial judge issued two written orders to show cause containing particularized descriptions of the troublesome conduct, providing appropriate notice to Crumplar.

■ Adequate notice, however, is not enough. Rule 11 authorizes a judge to impose sanctions only after the party has had a reasonable opportunity to respond.[56] In determining what a "reasonable opportunity to respond" requires under the circumstances, we note that *sua sponte* imposition of Rule 11 sanctions involve some of the same elements as a finding of criminal contempt.

In *DiSabatino v. Salicete*, we held that a trial judge's contempt finding was criminal, not civil, and therefore justified more procedural protections, because the sanction was intended to punish past conduct and could not be avoided through compliance with the court's order.[57] We recognized U.S. Supreme Court precedent holding that contempt occurring outside the court's presence (*i.e.*, indirect contempt) could not be summarily punished.[58] We concluded that the indirect criminal contempt present in *DiSabatino* mandated heightened procedural protections, which, under those facts, included a jury trial.[59]

■ By analogy to the criminal contempt sanctions imposed in *DiSabatino*, here the trial judge intended to punish Crumplar's past conduct, and Crumplar had no opportunity to avoid the sanctions through future action. Because the Superior Court issued the orders *sua sponte*, she did not afford Crumplar the Rule's 21-day "safe harbor" period to amend or withdraw the papers that he would have enjoyed had his opponent moved for sanctions.[60] While interpretations of the analogous Federal Rule 11 persuade us that contempt procedures are not mandated,[61] this does not mean that no additional protections should be afforded when a judge unilaterally invokes Rule 11(c)(1)(B). We hold that trial judges should afford the affected party heightened procedural protections when the judges raise Rule 11 on their own motions.

■ A "reasonable opportunity to respond" when a court invokes Rule 11(c)(1)(B) should include an opportunity for the attorney to present evidence and

---

the cold record may not disclose the full story").

**55.** Super. Ct. Civ. R. 11(c)(1)(B).

**56.** Super. Ct. Civ. R. 11(c).

**57.** *See DiSabatino v. Salicete*, 671 A.2d 1344, 1351 (Del.1996).

**58.** *Id.* at 1349 (citing *Mine Workers v. Bagwell*, 512 U.S. 821, 838, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)).

**59.** *Id.* at 1351 (citing *Mine Workers v. Bagwell*, 512 U.S. 821, 838, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)).

**60.** Super. Ct. Civ. R. 11(c)(1)(A).

**61.** Fed.R.Civ.P. 11, Advisory Committee Note, 1993 Amendments ("Whether the matter should be decided solely on the basis of written submissions or should be scheduled for oral argument (or, indeed, for evidentiary presentation) will depend on the circumstances."); *In re DeVille*, 361 F.3d 539, 553 (9th Cir.2004) (holding that the Advisory Committee Note to Federal Rule 11 clearly indicates that a criminal contempt process is not required).

respond orally before a court imposes sanctions. The judge should provide this hearing even if the attorney fails to request it. Because Rule 11(c)(1)(B), unlike Rule 11(c)(1)(A), does not allow attorneys an opportunity to correct or withdraw their filing, a personal right to be heard becomes all the more important. Attorneys have too much at stake for trial judges to assess their credibility and impose Rule 11 sanctions based on papers alone. Without an opportunity to respond orally, paper submissions may only accentuate the initial intuitions that led the judge to issue an order to show cause.

 If a judge anticipates imposing monetary sanctions, the hearing should include an inquiry into the attorney's ability to pay. We adopt the logic of other jurisdictions' holdings that the attorney's ability to pay should be a significant factor in determining the size of the award.[62] The deterrent effect of Rule 11 sanctions depends on a party's resources, but "courts must be careful not to impose monetary sanctions so great that they are punitive—or that might even drive the sanctioned party out of practice."[63] We reject the trial judge's apparent premise that the reasonableness of a sanction can be determined solely by a back-of-an-envelope calculation of an attorney's contingency fee if he were to prevail at trial.

The Superior Court judge, although motivated by understandable frustration compounded by the demands of a large docket, sanctioned an attorney on her own initiative supported only by "cold" papers, and imposed a large fine without inquiring into the attorney's ability to pay. These procedural shortcomings did not provide Crumplar with the "reasonable opportunity to respond," to which he was entitled.

### IV. Conclusion

For the foregoing reasons, we affirm the holding that an objective test applies to the analysis of attorney conduct before imposing Rule 11 sanctions, reverse the judgment of the Superior Court, and vacate the order imposing sanctions.

---

62. *See Baker v. Alderman,* 158 F.3d 516, 528–29 (11th Cir.1998) (collecting cases).

63. *Doering v. Union Cnty. Bd. of Chosen Freeholders,* 857 F.2d 191, 196 (3d Cir.1988).