**OF THE**
**STATE OF DELAWARE**

DAVID HUME, IV
MAGISTRATE IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Report: November 17, 2025
Date Submitted: October 8, 2025

D. Charles Vavala, Esquire
Jordan P. Hicks, Esquire
WILKS LAW, LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805

Andrew H. Sauder, Esquire
Daniel S. Atlas, Esquire
Dailey LLP
1201 N. Orange Street, Suite 7300
Wilmington, DE 19801

OF COUNSEL:

Dara Tarkowski, Esquire
Matthew Kramer, Esquire
ACTUATE LAW LLC
641 W. Lake St., 5th Floor
Chicago, IL 60661

     RE: Gregory Straub v. Persolve, LLC and Persolve LLC-Series 1
         C.A. No. 2025-0636-DH

Dear Counsel:

This is an LLC Books and Records action. About a month before trial, out-of-state counsel for the member seeking books and records inadvertently disclosed privileged communications in a belated discovery response to the LLC. These privileged communications revealed potential discovery violations. Counsel for the LLC did not notify counsel for the member directly about the inadvertent disclosure. The LLC notified the member of the disclosure by filing a motion for sanctions and

to waive privilege. An otherwise straightforward books and records matter devolved into cross-motions for sanctions. This is the Court's report on those cross-motions.

## I.     BACKGROUND

Gregory Straub filed a Verified Complaint seeking Books and Records of Persolve, LLC and Persolve, LLC-Series 1 on June 5. Compl., D.I. 1. Straub alleged that he was a member of Persolve, LLC-Series 1 and had a 4.566% ownership interest. Compl. ¶10. The parties stipulated to a case scheduling order ("scheduling order") and the Court granted it on August 11. D.I. 25. The scheduling order set August 27, 2025 as the substantial completion deadline for document discovery. *Id.* at ¶2(c). On August 27, Persolve produced 60 documents and Straub produced 165 documents. Opening Brief ¶¶12-13 [hereinafter OB], D.I. 28. Since Straub's response did not include any emails, Persolve wrote to Straub on August 29 that Persolve found Straub's production "severely deficient." OB Ex. 7, at 2. Straub's out-of-state counsel (OOSC) responded on September 2 that Straub would supplement discovery with a "small number of e-mails with Ms. Ferer related to payments under the Purchase Agreement." OB Ex. 7, at 1. OOSC also wrote, "[b]eyond that, as your production confirms, until his employment ended, Mr. Straub communicated with Ms. Ferer, and about the Purchase and Sale Agreement generally, using his Persolve e-mail account, *to which he does not have access*." *Id.*

(emphasis added). On August 29, the parties filed a Stipulation and [Proposed] Order for the Production and Exchange of Confidential Information. D.I. 27. Trial was scheduled for October 8, 2025. D.I. 21.

Unbeknownst to Persolve, Gregory Straub had retained a large volume of Persolve emails. On the evening of September 3, OOSC[1] produced supplemental discovery to Persolve's counsel via a Dropbox link. OB Ex. 8. OOSC intended to produce seventy-one "responsive" emails. Matthew Kramer Affidavit [hereinafter Kramer Aff.] ¶25, D.I. 33. Straub's e-discovery vendor encountered a software malfunction and accidentally produced over 700 emails (the entire review set). Kramer Aff. ¶30-31. Persolve did not notify Straub of anything amiss in the production. *See id.* ¶29.

The email production revealed to Persolve that Straub had retained Persolve emails during his employment and that OOSC was aware of this. OB Ex. 9,11-13, 32. On September 8, Persolve filed a Motion for Sanctions and Waiver of Attorney-Client Privileged Communications. D.I. 28. The Court continued the trial and scheduled oral argument on the Motion for October 8, 2025. D.I. 31. Upon receiving Persolve's Motion for Sanctions, Straub sent a clawback letter to Persolve.

---

[1] Counsel has been admitted pro hac vice. *See* D.I. 10.

Answering Brief Ex. 2 [hereinafter AB], D.I. 33. Counsel for both sides communicated about the production and motion but were unable to reach agreement. AB Ex. 3-4. Straub filed an Opposition to the Motion for Sanctions on September 22, 2025. D.I. 33. Persolve filed a Reply in Support of the Motion for Sanctions on October 1, 2025. Reply Brief [hereinafter RB], D.I. 35.

**Persolve's Motion for Sanctions and for Waiver of Privilege**

Persolve alleges that on August 1, 2025, the parties exchanged written discovery. OB ¶9. Straub agreed in an August 13 written response to provide documents and communications "to the extent such documents exist and can be located on diligent inquiry. *Id.* ¶10. On August 29, Persolve demanded an explanation when Straub produced no emails and reminded Straub that the substantial completion deadline had passed. *Id.* ¶¶13-14. Persolve alleges that OOSC misrepresented that Straub lacked access to Persolve emails. *Id.* ¶16. Persolve charged that OOSC was aware the Straub possessed the retained Persolve emails but misled Persolve. *Id.* ¶¶21-24.

Persolve also alleges that the email production revealed that Straub violated this Court's scheduling order. *Id.* ¶¶ 25-28. In particular, OOSC wrote to Straub on August 28, one day after the substantial completion deadline, and suggested that

he discuss with Straub "whether there are any other documents and records that we might need to supplement our production with." OB Ex. 31.

Finally, Persolve complains that OOSC directed Straub to self-collect documents. OB ¶29, Ex. 32. Persolve further alleges that Straub's email retention misappropriated Persolve's confidential and proprietary information. *Id.* ¶45. Persolve seeks sanctions against Straub and OOSC as well as a finding that Straub has waived attorney-client privilege regarding the email production. Persolve asks for Straub and OOSC to pay costs and fees related to the supplemental production and this motion. Persolve also requests that Straub return all documents he improperly retained.

**Straub's Opposition and Motion for Sanctions**

Straub's response to Persolve's Motion argues that he did not waive privilege because the overproduction was inadvertent, Straub took reasonable steps to mitigate it, and that overall fairness dictates that result. AB ¶¶13-19. Straub also asserts that this Court should deny Persolve's motion because Persolve's counsel violated Delaware Lawyers Rule of Professional Conduct 4.4(b) and this case's Confidentiality Order. AB ¶20. Straub seeks return or destruction of the inadvertently provided documents and an accounting of other individuals who may

have had access to them. AB at 15. He also seeks fees and costs associated with this motion and disqualification of opposing counsel. *Id.* at 15-16.

## II.     ANALYSIS

### A. Straub Waived Attorney-Client Privilege for the Inadvertently Disclosed Emails

I first address whether the supplemental production contained privileged material. The parties provided a copy of the production for *in camera* review. D.I. 39. The production contained a mixture of privileged and non-privileged communications that were also responsive and non-responsive to Persolve's discovery request. Delaware Rule of Evidence (*DRE*) 502, the evidentiary rule for attorney-client privilege, says that a client may refuse to disclose confidential communications between the client and an attorney regarding legal services. *DRE* 502(b). Communications are "confidential" when they are not intended to be disclosed to third parties. *DRE* 502(a)(2). The client holds the privilege, but the attorney may also invoke the privilege on behalf of the client. *DRE* 502(c). The emails between Straub and counsel here and for the related Wisconsin action are

privileged.   They involve confidential discussions between Straub and various counsel regarding rendition of professional legal services.[2]

I turn to whether the privilege was waived.  Disclosure to third parties may waive the privilege.  *DRE* 510; *In re Kent County Adequate Public Facilities Ordinances Litigation*, 2008 WL 1851790 (Del. Ch. Apr. 18, 2008).  Disclosure will not operate as a waiver when, "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including following any applicable court procedures to notify the opposing party or to retrieve or request destruction of the information disclosed."  *DRE* 510(c).

OOSC's affidavit shows that he reviewed emails from Straub's personal email account and marked seventy-one out of the entire review set as responsive on his e-discovery vendor's platform.  Kramer Aff. ¶¶25-26.  The vendor's process created images of the responsive documents including metadata.  *Id.* ¶27.  OOSC was able to download a .zip file containing the images and metadata of the production.  *Id.* ¶28.  OOSC sent the .zip file to a paralegal, who created a Dropbox link and password.  *Id.*  OOSC sent that Dropbox link and password to opposing counsel.  *Id.*

---

[2]  For efficiency, I have not specified individual emails from the production. Communications between Straub and any of his counsel are privileged in this context.

A "software bug" caused the entire review set to be copied into the production folder. Affidavit of John Tredennick ¶6, D.I. 33.

Considering the *DRE* 510(c) factors, I find that Straub's disclosure of the discovery cache waived attorney-client privilege. First, the disclosure was inadvertent. Straub and his counsel did not intend to provide the entire review set in their discovery response. The second factor requires the holder of the privilege to take reasonable steps to prevent disclosure. OOSC failed in this regard. Straub argues that "the privileged documents . . . were transmitted solely because of technical error." AB at ¶14. Not so. OOSC's affidavit is cleverly crafted. He asserts that he designated seventy-one documents for production and the vendor created a folder containing images and metadata for the responsive documents. Kramer Aff. ¶27. He wrote, "I am able to download a production file from the review interface, which is a .zip file containing the images and load files for the documents that had been marked responsive." *Id.* ¶28. Coupled with the assertion that the inadvertent production was "solely" the result of the e-discovery vendor's software malfunction, OOSC's affidavit gave the impression that he reviewed the .zip file. Missing from the affidavit is whether OOSC reviewed the .zip file that he was able to download.

At oral argument on the motion, OOSC admitted that he did not review the .zip file. OA Tr. 83:5-7, D.I. 42. When asked why his final review of the .zip file was not a reasonable step to prevent disclosure, OOSC stated, "yes, with hindsight, there are things that we could have checked." *Id.* 85:8-13. When later asked why the failure to review the .zip file did not constitute a *DRE* 510(c) waiver, OOSC backtracked, stating "I believe we took all reasonable steps and reviewed these documents meticulously and gave explicit instructions to people whose job it is to follow those instructions . . . ." *Id.* 89:19-23. But OOSC did not take the most reasonable step. He elected not to conduct a final review of the .zip production file. That basic step would have prevented the inadvertent production. OOSC's behavior is at odds with the reasonable precautions taken by the attorneys in *Kent*. There, outside litigation counsel reviewed all documents before producing them to the opposing party. 2008 WL 1851790, at *5. Straub's Delaware counsel suggested that requiring counsel to download and review the production before it is sent "would drastically alter the way parties in Delaware conduct discovery." OA Tr. 112:8-9. It would not. In this case, a cursory, non-contextual scan of the images would have revealed a volume of documents far beyond what OOSC initially designated as responsive. This type of review could have been accomplished in minutes, is not burdensome, and is a basic responsibility of counsel.

Indeed, this Court has addressed Straub's Delaware counsel's concern. This Court has applied a four factor test incorporating the second and third prongs of *DRE* 510(c): "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of discovery and extent of disclosure; and (4) the overall fairness, judged against the care or negligence with which the privilege is guarded." *In re Kent Cnty.* at *5 (citing *Monsanto Co. v. Aetna Casualty & Surety Co.*, 1994 WL 315238, at *6 (Del. Super. May 31, 1994)). In *Kent*, the inadvertently disclosed documents comprised less than 0.1% of all documents disclosed in the case. *Id.* at *5. The Court found the disclosure to be "a relatively minor incident in the context of the broad discovery engaged in by the parties." *Id*. Similarly, where a litigant has sought to claw back 20 documents from a production including "585 privilege log entries and over 140,000 pages of content," this Court has found no waiver. *TCV VI, L.P. v. TradingScreen Inc.*, 2015 WL 5674874, at *5 (Del. Ch. Sep. 25, 2015).

Here, the inadvertent disclosure dwarfed the previous disclosures. By rough estimation, the late-produced discovery exceeded Straub's initial production by ten times. The inconsistency in sheer volume would have been apparent had Counsel conducted a cursory check. It does not place an additional burden on parties.

Both *DRE* 510(c) and *Kent* impose a temporal factor on the disclosing party. Here, Straub contacted opposing counsel and sent a clawback letter the same day as he received Persolve's motion. Straub's counsel acted with appropriate haste.

The final factor in *Kent* is overall fairness viewed through the lens of the care taken to guard the privilege. The relevant disclosure in *Kent* was a "minor incident in the context of the broad discovery engaged in by the parties." 2008 WL 1851790, at *5. There too, the opposing party suffered no prejudice in returning the inadvertently disclosed documents because they were not relevant to the litigation. *Id.* at *6. Here, by contrast, OOSC failed to make a reasonable review of the production. He lacked care in guarding the privilege. The disclosed documents possess relevant information to Straub's standing as a member of Persolve. Moreover, Straub possessed Persolve's proprietary information, failed to disclose this fact, and would have faced no consequence for such culpable conduct but for the inadvertent disclosure. In balancing the fairness, I also find that Straub possessed emails but created an inference that he had no access to them. A portion of those emails were discoverable. The overall fairness factor supports waiver.

**B. Straub Violated Discovery and the Scheduling Order**

Persolve argues that Straub and OOSC violated the scheduling order and discovery. The parties stipulated to the scheduling order, and the Court granted the scheduling order on August 11. D.I. 27. The parties agreed to substantially complete document production by August 27. *Id.* ¶2(c). OOSC wrote to Persolve's counsel on September 2 that, "[b]eyond that, as your production confirms, until his employment ended, Mr. Straub communicated with Ms. Ferer, and about the Purchase and Sale Agreement generally, using his Persolve e-mail account, to which he does not have access." OB Ex. 7. However, Straub kept his Persolve emails in an Outlook data file. OB Ex. 24. He described them as "the entire outlook file I had at the office" in a January 31, 2025 email to counsel.[3] *Id.* On February 12, 2025, Straub emailed counsel that he would review digital media for a document search and that he "transferred the entire outlook information and I save most things so it should have contained information from 2015-2023." OB Ex. 25.

Our Courts have been clear that "[d]iscovery abuse has no place in [Delaware] courts, and the protection of litigants, the public, and the bar demands nothing less than that [Delaware] trial courts be diligent in promptly and effectively taking

---

[3] "Counsel" in this and the following sentence refer to OOSC's co-counsel, who has also been admitted pro hac vice.

corrective action to 'secure the just, speedy and inexpensive determination of *every* proceeding' before them." *In re Examworks Group, Inc. Stockholder Appraisal Litigation*, 2018 WL 1008439, at *6 (Del. Ch. Feb. 21, 2018) (quoting *Holt v. Holt*, 472 A.2d 820, 824 (Del. 1984) (emphasis in original)). "A party that disregards the provisions in a scheduling order that governs discovery is engaging in discovery abuse." *Id.* at *6. When discovery violations call for sanctions "the sanction must be tailored to the culpability of the wrongdoer and the harm suffered by the complaining party." *Id.* at *6 (quoting *Cartanza v. Cartanza*, 2013 WL 1615767, at *2 (Del. Ch. Apr. 16, 2013), *reargument denied*, 2013 WL 3376964 (Del. Ch. July 8, 2013)). Court of Chancery Rule 37(b)(2) provides the realm of possible sanctions for discovery violations. This non-exhaustive list includes a finding of facts in favor of the aggrieved party, preventing the offending party from support or opposing claims and defenses or presenting, striking portions of pleadings, dismissing a portion of the action, or issuing a default judgment against the offending party. Ch. Ct. R. 37(b)(2).

I address OOSC's representation to opposing counsel and violation of the scheduling order. OOSC's explanation for his representation in the September 2 email is that he "was trying to speak in the most banal terms." OA Tr. 68:5-7. OOSC chose his words to opposing counsel poorly. His misrepresentation gave Persolve

the impression that he had no access to Straub's Persolve emails. Yet he knew that Straub had an Outlook file containing Persolve emails. OOSC admitted at oral argument that he "did know that there were some emails that existed." OA Tr. 69:20-21. I find that Straub violated discovery by failing to accurately depict his access to the email in even the most general terms.

Straub also failed to meet the discovery deadline. Persolve filed a request for documents on August 1 seeking material that Straub intended to or may use at trial. OB Ex. 5, ¶11. Straub objected on August 13. OB Ex. 6 at 17. Persolve responded by letter a day later. OB Ex. 29. Persolve described Straub's objection as "plainly insufficient" and told Straub that he needed to produce all potential documents that may later become exhibits by the August 27 substantial completion deadline. *Id.* at 2.

Here, OOSC emailed Straub the day after the substantial completion deadline suggesting a discussion about more documents and records for supplemental production. OB Ex. 31. OOSC explained at oral argument that he made this request to Straub out of an abundance of caution to avoid a discovery dispute. OA Tr. 74:20-24. OOSC knew for months that Straub retained Persolve emails. OOSC conducted forensic collections after the substantial completion deadline. Tr. 71:6-8. Although OOSC claims that he "did my best to supplement in as timely a fashion as I could,"

he failed to prioritize reviewing discovery material. *Id.* 77:5-6. Indeed, his own misrepresentation about Straub's access to Persolve email made the emails showing Straub's access to his Persolve Outlook email file relevant.

Straub's attempt to distinguish this Court's decision regarding production after the substantial completion deadline in *Terramar Retail Centers, LLC v. Marion #2-Seaport Trust U/A/D June 21, 2002* is misplaced. 2018 WL 6331622 (Del. Ch. Dec. 4, 2018). There, the defendant produced 1,367 pages of documents by the substantial completion date but followed that with tens of thousands of pages of production weeks later. *Id.* at *13. The Court granted plaintiff's evidence-preclusion request. This case is different and just as egregious in its own way. *Id.* at *14 (applying Ct. Ch. R. 37(b)(2)(B). Straub intended to produce seventy-one documents after the deadline but inadvertently produced many more. This production revealed that Straub possessed a cache of responsive emails and that he had not intended to provide responsive emails or the existence of the email tranche. Straub and OOSC's conduct violated the spirit of discovery and the scheduling order. It requires sanctions.

With that as the discovery backdrop, I will not delve too deeply into Persolve's argument that OOSC inappropriately directed Straub to self-collect discovery. OB, ¶¶29-30, 41-42, Ex. 31. Our caselaw and common sense dictate that having a self-

interested party review material for discovery is not best practice and creates substantial risk. *Goldstein v. Denner*, 310 A.3d 548, 580-81 (Del. Ch. 2024) (citing *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 935-36 (N.D. Ill. 2021)). This is illustrative of OOSC's haphazard approach to Straub's information and the discovery process.

Persolve asks the Court to order Straub and OOSC to bear the fees and costs associated with the supplemental production and Persolve's motion for sanctions. OB ¶44. I address that later in this report. Persolve also seeks return of its confidential information. *Id.* ¶45. Straub is ordered to return all confidential information retained in violation of the requirements of Persolve's Employee Handbook. OB Ex. 1. If the parties disagree about the nature of retained information, the Court will order an evidentiary hearing.

Finally, Persolve also asks the Court to vacate the "Confidential Discovery Material" designation so that it can use the inadvertently disclosed documents in other litigation. OB ¶46. I decline Persolve's invitation to decide what evidence another court might allow to be introduced under these unique factual circumstances.

### C. Persolve's Alleged Violation of Delaware Lawyers' Rule of Professional Conduct 4.4(b) is Not Sanctionable

Straub alleges Persolve's counsel should be sanctioned for violating Delaware Lawyers' Rule of Professional Conduct (DLRPC) 4.4(b).[4]  He argues that Persolve violated this rule when it received the inadvertent disclosure and failed to immediately notify him so that he could take protective measures.  Straub's argument is incorrect.  The Delaware Supreme Court supervises attorney conduct and enforces the DLRPC.  *Crumplar v. Superior Court ex rel. New Castle County*, 56 A.3d 1000, 1009 (Del. 2012).  "[T]rial judges have no independent jurisdiction to enforce the Rules of Professional Conduct." *Id.*  A trial judge should refer attorney misconduct to the Office of Disciplinary Counsel rather than subject it to sanctions. *Id.*  The Court inquired at oral argument whether Straub's counsel reported the

---

[4] "A lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent shall promptly notify the sender." DLRPC 4.4(b).  While DLRPC 4.4(b) requires notification, the Rules do not govern whether an attorney receiving an inadvertently received document must return the document. *Id.* cmt. [2].  Delaware caselaw determines such a question, as discussed above. *See id.*

alleged DLRPC 4.4(b) violation to the Office of Disciplinary Counsel. Straub's Delaware counsel advised that he discussed it with partners at his firm and "our analysis was that it didn't rise to the level under the rule." Tr. 94:1-5.

Turning to the merits, Straub's behavior gave Persolve a colorable claim that the disclosure was intentional. Persolve wrote to Straub after the substantial completion deadline that document production was "severely deficient", and that Straub had not produced a single responsive email. OB Ex. 7 at 2. Straub responded that he was working with his discovery vendor on supplemental production of "a small number of e-mails with Ms. Ferer related to payments under the Purchase Agreement and expect to have those by tomorrow. *Id.* at 1. Straub's privilege log contained only three documents. OB Ex. 42. As of the oral argument, Straub's privilege log was not updated. Tr. 78:14-80:4.

On September 3, Persolve awaited a supplemental discovery production containing emails. Persolve received such a production. Persolve's counsel believed that the production was an intentional "data dump." Tr. 17:2-3. The initial email in the discovery was responsive and showed the Straub had access to his Persolve emails.[5] Other responsive emails were scattered throughout the production

---

[5] The Court requested that the parties provide the entire disclosure for *in camera* review. At oral argument, the parties advised that the link the Court received had individual PDFs

amid unresponsive emails. This is consistent with a "data dump." It was reasonable under these unique circumstances for Persolve to review the 794 individual emails in the disclosure and presume that Straub waived privilege. I do not find reportable misconduct by Persolve's counsel.[6]

### D. Persolve is Entitled to Fees and Costs Associated with Filing the Motion for Sanctions

Having found that Straub violated discovery and the scheduling order, I must also determine whether Straub, OOSC, or both, will pay the reasonable expenses associated with the violation. Ch. Ct. R. 37(b)(2). "An award of expenses and fees is mandatory under Rule 37 where a party is found to have failed to honor a discovery request 'unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.'" *Beck v. Atlantic Coast PLC*, 868 A.2d 840, 851-52 (Del. Ch. 2005) (quoting Ch. Ct. R. 37(a)(4)(A)-

---

but the actual production was a series of images of the documents, not individual files. Tr. 116:1-118:2. The content was identical but the formatting was different.

[6] As I lamented at the hearing, animosity between counsel led to a communications breakdown. Many, if not all, of the problems before me could have been avoided had the lines of communication remained open.

(B)).   The burden is on the violating party to show justification or other circumstances leading to an unjust award. *Id.* at 852 (citations omitted).

Straub and OOSC failed to honor a discovery request and the Court's scheduling order.  Straub maintained a collection of Persolve emails after he was no longer employed by them.  OOSC was aware of the email collection.  Straub and OOSC are both culpable.  OOSC created an impression to Persolve that Straub did not have Persolve emails and aggravated the violation.  The inadvertent disclosure revealed responsive documents— documents that would be undiscovered if left to Straub and OOSC.  Their risky conduct violated the integrity of the discovery process.  Straub's argument that Persolve violated the DLRPC *after* the inadvertent disclosure does not justify the discovery violation.  The most narrowly tailored sanction to deter this and future similar conduct is to require Straub and OOSC to compensate Persolve for its efforts to untangle these issues.   Straub and OOSC are ordered to pay the reasonable fees and expenses associated with the Supplemental Production and Motion for Sanctions and Waiver of Attorney-Client Privileged Communications.

## III.   CONCLUSION

For the reasons explained above, I find that Straub violated discovery and this Court's scheduling order.   Straub has waived attorney-client privilege for the

supplemental production material for this case only. Straub and OOSC are responsible for the fees and costs associated with the supplemental production and this motion. Persolve's counsel did not violate DLRPC 4.4(b), but even if they did, a violation is not sanctionable by this Court. Persolve shall submit an affidavit or letter for fees and costs under Court of Chancery Rule 88. This is a report under Court of Chancery Rule 144.

Sincerely,

*/s/ David Hume, IV*

David Hume, IV
Magistrate in Chancery

cc:     All counsel of record (by File & ServeXpress)