F. Warren HURST and Carmand Normand, Individually and on Behalf of all Other Similarly Situated, Plaintiffs,

v.

GENERAL DYNAMICS CORPORATION, Defendant.

Civ. A. No. 9735.

Court of Chancery of Delaware, New Castle County.

Submitted: March 29, 1990.
Decided: May 11, 1990.

R. Bruce McNew and Pamela S. Tikellis, of Greenfield and Chimicles, Wilmington, for plaintiffs.

Edward B. Maxwell, 2nd, and Bruce L. Silverstein, of Young, Conaway, Stargatt & Taylor, Wilmington, Donald R. Harris and Richard Franch, of Jenner & Block, Chicago, Ill., of counsel, for defendant.

## OPINION

JACOBS, Vice Chancellor.

The plaintiffs, who hold common shares of Asbestos Corporation Limited, a Canadian corporation, ("ACL"), bring this action individually and on behalf of a class of ACL shareholders allegedly injured by certain transactions that occurred between 1982 and 1986, and were related to the acquisition of ACL's corporate parent by the Province of Quebec. The plaintiffs named as defendants General Dynamics Corporation, a Delaware corporation ("General Dynamics"), and three of its directors. The parties later stipulated to the dismissal, without prejudice, of the individual defendants. On May 10, 1988, General Dynamics moved to dismiss or stay this Delaware action, on *forum non conveniens* grounds, in favor of certain proceedings pending in Canada. On July 12, 1988, General Dynamics moved to impose Rule 11 sanctions upon the plaintiffs, based upon certain inaccurate statements made in the plaintiffs' answering brief on the motion to dismiss or stay.

There were two oral arguments on these motions, the first on March 7, 1989, and the second, after the filing of supplemental briefs, on March 6, 1990. This is the decision on those motions.

## I. THE FACTS

### A.

For purposes of this motion the essential facts are undisputed. ACL is a Canadian corporation, whose stock is traded on the Toronto and Montreal Stock Exchanges. (Compl. ¶¶ 1, 2, 12). On October 22, 1977, the Province of Quebec ("Quebec") announced that it intended to acquire ACL as part of its program to nationalize the Canadian asbestos industry. For that purpose, Quebec created Societe Nationale de l'Amiante ("SNA") as a provincial crown corporation. (Compl. ¶ 12). At that time, General Dynamics (Canada) Limited ("GD Canada"), which was a subsidiary of General Dynamics, held 55.64% of ACL's shares.

On September 21, 1979, Quebec, acting through SNA, offered to buy all of GD Canada's ACL shares (*i.e.*, its 56% stock interest) for $42.00 per share, which would have represented an aggregate purchase price of $55,310,420. The plaintiffs claim that Quebec promised to make a similar offer to acquire the minority shares of ACL, and that General Dynamics, without consulting ACL's minority shareholders, rejected Quebec's offer as "unrealistic and unjust." (Compl. ¶ 13). The plaintiffs further allege that General Dynamics also elicited the support of ACL's minority shareholders, by representing through the media that the minority shareholders would receive equal treatment in any disposition of its ACL holdings. (Compl. ¶¶ 16–18).

Quebec later took steps to expropriate ACL's Canadian assets. General Dynamics challenged Quebec's right to expropriate its property, but was unsuccessful. On March 16, 1981, General Dynamics was denied leave to appeal to the Supreme Court of Canada. (Compl. ¶¶ 15, 21).

On October 9, 1981, Quebec announced that if it did not have an agreement with General Dynamics to acquire General Dynamics' ACL shares by November 30, 1981, then it (Quebec) would exercise its expropriation authority. (Compl. ¶ 22). On November 9, 1981, Quebec reached an agreement with General Dynamics, pursuant to which SNA would immediately acquire voting control of GD Canada and, through a complex scheme, would ultimately become GD Canada's sole owner. (Compl. ¶ 23). At about that same time, Quebec's Minister of Finance allegedly announced that if Quebec acquired General Dynamics ACL holdings, ACL's minority shareholders would receive similar treatment. (Compl. ¶¶ 24–26).

Under the SNA/General Dynamics agreement, SNA acquired voting control of GD Canada on February 12, 1982. SNA did so by purchasing 21,124 newly created Class A shares of GD Canada stock for $17,300,000.[1] Because each Class A share was entitled to five votes (four votes more than the one vote per share allotted to General Dynamics' GD Canada shares), SNA, which owned only 17.5% of GD Canada's equity, acquired control over 51% of its voting power.[2]

SNA also entered into a separate agreement with General Dynamics that permitted General Dynamics to put its GD Canada shares to SNA during the period February 12, 1984 through February 11, 1989. That agreement also permitted SNA to call General Dynamics' GD Canada shares during the period November 12, 1988 through February 11, 1989. In either case the price was $42.00 per share, plus interest from November 12, 1982. If both the puts and calls expired, a right of first refusal continued so long as either SNA or General Dynamics held GD Canada shares. (Compl. ¶ 32).

The plaintiffs further allege that over the next five years, $75 million of ACL's working capital was deployed to pursue Quebec's policy of maximizing employment levels in the asbestos markets, at a time when the Canadian asbestos industry was cutting back due to a deteriorating market. Thus, plaintiffs claim, SNA operated ACL for the benefit of Quebec rather than of ACL's shareholders. (Compl. ¶ 33). In August of 1986, Mr. Hurst, a plaintiff in this action, requested a meeting with General Dynamics to clarify General Dynamics' intentions with respect to ACL's minority shareholders. General Dynamics, however, declined the request. (Compl. ¶ 34).

On or about November 25, 1986, General Dynamics, without public disclosure, exercised its put option, and in December, 1986, it sold its GD Canada shares to SNA for approximately $170 million. In that manner Quebec acquired the remaining shares of GD Canada. (Compl. ¶ 35).

In this Delaware action, the plaintiffs complain that Quebec and SNA wrongfully have refused to make any offer to purchase the remaining (minority) ACL shares. They contend that the securities laws of both Ontario and Quebec required Quebec to make follow-up offers to minority shareholders in any tender offer for control of a company at more than an established premium over the market price, and that SNA and Quebec have refused to comply with those legal obligations. (Compl. ¶ 37).

The defendant, however, is not Quebec or SNA. Rather, it is General Dynamics, against whom the complaint alleges five counts: Breach of Fiduciary Duty, Unjust Enrichment, Fraud, Breach of Contract (Express and Implied), and Negligent Misrepresentation. The plaintiffs seek an award of damages on behalf of all ACL minority shareholders, occasioned by their inability to sell their ACL shares to Quebec or to SNA.

### B.

Also relevant to the pending motions are four Canadian proceedings that either are

---

1. GD Canada changed its name to Mines SNA, Inc., but for the sake of simplicity, it will be referred to as "GD Canada."

2. GD Canada's sole assets were its controlling stock interest in ACL, $17.3 million of new capital provided by SNA, and approximately $16 million in previously held cash and short term investments. (Compl. ¶ 31).

presently, or were formerly, pending. Those proceedings are now briefly described.

(1) *Fradet v. Societe Asbestos Ltee.,* Quebec Super., No. 200–06–000003–866. In November, 1986, Fradet, an ACL minority shareholder, filed a class action in the Quebec Superior Court. Fradet purported to represent all current ACL minority shareholders and all former shareholders who disposed of their shares at a price and on terms less favorable than those obtained by General Dynamics. He brought this action against General Dynamics, Quebec, SNA, Mines, and ACL. On March 12, 1986, the Quebec Superior Court denied Fradet's motion to proceed as a class action. The Quebec Court of Appeal later affirmed that decision. *Fradet v. Societe Asbestos Ltee.,* Quebec App., No. 200–09–000255–878 (Feb. 8, 1990).

(2) *Ontario Securities Commission Proceeding.* In July of 1988, the Ontario Securities Commission conducted a hearing to consider whether SNA and Quebec were obliged to make a follow-up offer to ACL's minority shareholders. The Committee for Equal Treatment of Asbestos Corporation Shareholders, (the "Committee") of which the plaintiffs are the co-chairmen, appears to represent the ACL minority shareholders in that proceeding. On August 15, 1988, the Commission decided to reserve threshold jurisdiction questions and to proceed with the merits of the case. To date no decision has been rendered with respect to either the merits or the appeal from the Commission's decision to proceed without first deciding the jurisdictional issues.

(3) *Quebec Securities Commission Proceeding.* On the Committee's petition, the Quebec Securities Commission held a hearing on June 13, 1988 on the same issues that were before the Ontario Securities Commission. The Quebec Commission dismissed the petition on November 7, 1988, and the petitioner appealed to the Court of Appeal of Quebec. That appeal is still pending.

(4) *Hurst v. Societe National de L'Amiante,* No. 245261/87. On December 4, 1987, Messrs. Hurst and Normand, the plaintiffs in this action, filed a "Notice of Action" in the Ontario Supreme Court. On January 18, 1988 the Ontario Court permitted the plaintiffs to amend their Notice of Action to add General Dynamics as a defendant. The plaintiffs' claims against General Dynamics in the Ontario proceeding are virtually identical to those raised by them in this Delaware action. In both actions, the plaintiffs contend that General Dynamics misrepresented its intentions to ACL's minority shareholders. They also claim in both actions that General Dynamics violated its fiduciary duties to ACL's minority shareholders. The plaintiffs filed this Delaware action about two months after they added General Dynamics as a defendant in Ontario, but they did not serve General Dynamics with the Amended Notice of Action and Statement of Claim in the Canadian proceeding until May 26, 1988. The plaintiffs' Ontario action has not proceeded further.

## II. THE MOTION TO DISMISS OR STAY

▇▇▇ The criteria governing a *forum non conveniens* motion to dismiss or stay are well established and involve several factors: the applicability of Delaware law, the relative ease of access to proof, the availability of compulsory process for witnesses, the pendency or non-pendency of a similar action or actions in another jurisdiction, and all other practical considerations that would make the trial easy, expeditious and inexpensive. *Miller v. Phillips Petroleum Co.,* Del.Supr., 537 A.2d 190, 202 (1988); *Parvin v. Kaufmann,* Del.Supr., 236 A.2d 425, 427 (1967); *General Foods Corp. v. Cryo–Maid, Inc.,* Del.Supr., 198 A.2d 681, 683–84 (1964).[3] The burden of proof always rests on the movant, but the degree of that burden will vary, depending upon whether " 'there is a prior action pending elsewhere, in a court capable of

---

**3.** Those cases refer also to a sixth factor, namely, "the possibility of a view of the premises." Because there are no premises that the Court will need to view, that factor has no bearing in this case and will not be further discussed.

doing prompt and complete justice, involving the same parties and the same issues....'" *Williams Natural Gas Co. v. Amoco Production Co.*, Del.Ch., C.A. No. 11040, Jacobs, V.C., Mem.Op. at 6, 1990 WL 13492 (Feb. 15, 1990), quoting *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, Del.Supr., 263 A.2d 281, 283 (1970). If such a prior filed action is pending, our case law mandates the liberal exercise of discretion in favor of a stay.

For purposes of deciding this motion, I will put to one side the argument that General Dynamics' burden of proof should be lessened by reason of a prior-filed action involving the same parties and issues. That is, it will be assumed without deciding that General Dynamics, as the party seeking the stay, is required to shoulder the burden of showing sufficient inconvenience and hardship as will move the Court to grant the motion.[4] *See ANR Pipeline v. Shell Oil Co.*, Del.Supr., 525 A.2d 991, 992 (1987). For the reasons now discussed, under even that more stringent burden the motion must be granted.

### A. The Applicability of Delaware Law

The first *forum non conveniens* factor to be considered is the applicability of Delaware law. The plaintiffs contend that because choice of law determinations are inherently fact specific, any determination of the appropriate choice of law would be premature, and none should be made until the facts are fully developed through discovery. I cannot agree. In this procedural setting the Court need not definitively decide what law will apply, but only what law appears likely to apply. To delay that evaluation until a definitive record is developed would defeat the purpose of a motion to dismiss or stay, which is to advance the expeditious and economic adjudication of the case. *See General Foods Corp.*, 198 A.2d at 683; *Life Assurance Co. v. Associated Investors Int'l Corp.*, Del.Ch., 312 A.2d 337, 340 (1973). As to four of the five counts alleged against General Dynamics (Unjust Enrichment, Fraud, Negligent Misrepresentation and Breach of Contract), Delaware choice of law principles require the application of the law of either the jurisdiction where the alleged wrong or action occurred, or the jurisdiction that bears the most significant relationship to the events in question.[5] Those four claims arise out of the transactions by which SNA acquired control of ACL, most if not all of which occurred in Canada. (Wells Aff. ¶ 4).

Those transactions were negotiated and executed in Quebec during several meetings among representatives of Quebec, SNA, and GD Canada. (Wells Aff. ¶¶ 4, 5). The Agreement of February 12, 1982, by which these transactions were given their legal expression, was written in French, was signed by the parties in Quebec, and provides that it is governed by Quebec law. (Wells Aff. ¶ 5). The stock that changed hands pursuant to the Agreement is traded on the Montreal and Toronto stock ex-

---

4. Although I need not decide that question, elsewhere in this Opinion I do find that the *Hurst* Ontario action, described *supra* at 1337 and discussed *infra* at 1340, qualifies as a first-filed action involving the same parties and issues. That being the case, it would be appropriate to apply the lesser burden of proof under *McWane.*

5. Unjust enrichment claims are governed by the most significant relationship test, *see Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.*, 560 F.Supp. 1372, 1382 (D.Del.1983); Restatement (Second) Conflict of Laws § 221(2) (1971). Fraud cases are governed by the law of either the jurisdiction that has the most significant relationship to the claim, *see Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 576 F.Supp. 107, 127 (D.Del.1983), *aff'd*, 740 F.2d 956 (3d Cir. 1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985), or the jurisdiction where the fraud occurred, *see Johnston Assoc., Inc. v. Rohm and Haas Co.*, 560 F.Supp. 916, 918 (D.Del.1983). Contract cases are governed either by a place of formation test, *see Miller v. Newsweek, Inc.*, 660 F.Supp. 852, 854 (D.Del. 1987); *Wilmington Trust Co. v. Pennsylvania Co.*, Del.Supr., 172 A.2d 63, 66 (1961); *Harris v. New York Life Ins. Co.*, Del.Ch., 33 A.2d 154, 157 (1943); or a most significant relationship test, *Coca Cola Bottling Co. of Elizabethtown, Inc. v. Coca Cola Co.*, 668 F.Supp. 906, 918 (D.Del. 1987); *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, Del.Supr., 394 A.2d 1160, 1166 (1978). The negligent misrepresentation claim is governed by the law of the place where the tort occurred, *see Tew v. Sun Oil Co.*, Del.Supr., 407 A.2d 240, 242 (1979); *Friday v. Smoot*, Del. Supr., 211 A.2d 594, 595 (1965).

changes. (Wells Aff. ¶ 3). Finally, most of the statements of which the plaintiffs complain appeared either in Canadian newspapers or ACL reports, or were uttered at ACL meetings by ACL officers in Canada. (Compl. ¶¶ 18(a), (d), (e), (f), (h), (i), 25, 27). Because the critical events occurred in Canada, and because little or no relationship exists between those events and Delaware, it appears probable that Delaware law will not govern four of the plaintiffs' five counts.

That leaves the fifth (Breach of Fiduciary Duty) count. Fiduciary duty claims are normally governed by the law of the defendant's state of incorporation. *See McDermott, Inc. v. Lewis,* Del.Supr., 531 A.2d 206, 215 (1987). Plaintiffs argue that because General Dynamics is a Delaware corporation, any fiduciary duties that it owes to the minority shareholders of ACL are governed by Delaware law. However, that proposition assumes that the rights of the minority shareholders of ACL, which was a Canadian subsidiary of another General Dynamics' Canadian subsidiary, would be governed by Delaware law. The claim that General Dynamics owed fiduciary duties under Delaware law to ACL's minority shareholders, *i.e.,* to the shareholders of a third-tier foreign subsidiary, is an untested proposition for which the plaintiffs cite no authority. In any event, assuming without deciding that Delaware law would govern this claim, that factor is entitled only to minimal weight, because at best Delaware law would govern only one of the complaint's five counts.

### B. *The Ease of Access to Proof and Availability of Witnesses*

Most of the documents relevant to this action are located, and virtually all of the pertinent negotiations, meetings, transactions, and contracts occurred, in Canada. The February 12, 1982 Agreement was negotiated and signed in Quebec. ACL, SNA, and GD Canada, are all Canadian corporations located in Canada. (*See* Wells, Lederman, Mercier Affs). Quebec's documents

and representatives are located in Canada. Most of the allegedly misleading or fraudulent statements appeared in Canadian newspapers, company reports, or publications or were made by officers of Canadian corporations or at meetings that took place in Canada.[6] It thus appears that most of the relevant documents and witnesses are located in Canada.

Further, Quebec law appears to authorize compulsory process for witnesses who are parties to Canadian proceedings or officers or managing agents of Canadian parties. (Mercier Aff. ¶ 7). On the other hand, it is doubtful that this Court could issue compulsory process to officials of Canadian corporations in this action. Those persons would be amenable to service of Delaware process only in cases arising out of the business that they transact in this State, *see* 8 *Del.C.* § 382; *see also Harry David Zutz Ins., Inc. v. H.M.S. Assoc., Ltd.,* Del.Super., 360 A.2d 160, 163–64 (1976), and no such business is shown to have been transacted here.

### C. *The Pendency or Non–Pendency of Similar Action(s) in Another Jurisdiction*

As previously noted, there are several Canadian actions whose outcome might affect the outcome of this action. The question is what weight should be accorded to the pendency of those proceedings. Three of the four merit no weight. The fourth weighs significantly in favor of granting the motion.

The Quebec Superior Court action, *Fradet v. Societe Asbestos Ltee.* is of no help to General Dynamics. In *Fradet,* the Courts of Quebec ruled that Bertrand Fradet may not maintain a class action on behalf of the ACL minority shareholders. Because the class-wide relief being sought here is not available in the Quebec Superior Court, *Fradet* cannot be regarded as a pending action involving the same parties.

Nor do the two Canadian securities commission proceedings involve the same par-

---

**6.** Plaintiffs have failed to support the statement in their brief that "many of the alleged fraudulent statements, promises and representations at

issue were made and [distributed only] in the United States." Pl.Memo at 9.

ties or issues as this action.[7] It is true that the disposition of those proceedings may affect the outcome of this action, and might even render this action moot should the plaintiffs obtain relief that redresses their grievances. At this stage, however, the plaintiffs' right to seek independent redress in this Court on the basis of fiduciary duty, contract, and tort law cannot be curtailed because of that highly speculative possibility.

The fourth action, however, filed by these very plaintiffs in Ontario, is a pending action involving the same parties and issues. *Hurst v. Societe National de L'Amiante*, No. 245261/87. The plaintiffs do not deny this. Instead they argue that their Ontario action should not be accorded analytical weight, because it was not the "first filed," because it was filed only as a precautionary measure in the event that plaintiffs do not prevail here, and because the Ontario action is currently inactive. I cannot agree with that reasoning.

██ It is not clear that the relative priority of the plaintiff's two actions is even analytically relevant to an analysis involving the application of the *forum non conveniens* factors.[8] However, I need not decide that issue, because the undisputed facts establish that the Ontario action was the first filed. The plaintiffs admit that they filed their Ontario action, and amended their complaint to add General Dynamics as a defendant, before they filed this action. They argue that because General Dynamics was not served until May, 1988 (months after this action was filed) and

because under Canadian law an action is not commenced until notice is served upon the defendant, this is the "first-filed" action against General Dynamics. Whatever might be the Canadian law on that subject, it is undisputed that the plaintiffs first asserted their claim against General Dynamics in their Canadian lawsuit, and before they filed this Delaware action. The delay in serving formal notice of that claim was of the plaintiffs' own choosing. Plaintiffs could as easily have served General Dynamics in February, in which event even under their view of the law, the Ontario action would have been "first filed." The plaintiffs cannot utilize their own delay in serving General Dynamics in Canada as a basis for contending that this is the "first filed" action for *forum non conveniens* purposes.[9]

### D. *Other Practical Considerations*

Finally, other practical considerations make it far more expeditious and easy, and far less costly, to defer to the Ontario proceeding. The plaintiffs are both Canadian citizens having strong contacts with Canada. They actively participate in the Committee, and are already pursuing various claims in Canada the resolution of which may serve to narrow the issues presented here. To permit the continuation of this action will incur the risk of inconsistent verdicts and would unnecessarily, and at considerable cost, multiply the labors of all involved. That would occur, moreover, in circumstances where Delaware has little or no contact and interest in the controversy.

7. These plaintiffs are arguably, as a practical matter, parties to those proceedings by virtue of their active role in the Committee. However, General Dynamics is not a party to the Canadian Securities Commission proceeding, and neither proceeding addresses the same issues presented by this action. The securities commission proceedings concern the obligations of SNA and Quebec under Canadian securities law. They do not address General Dynamics' obligations to SNA's minority shareholders under fiduciary, contract, or tort law.

8. As distinguished from the question of whether the *McWane* burden of proof applies. On that issue, priority is definitely relevant. *See McWane*, 263 A.2d at 283.

9. The plaintiffs' argument that this action is first-filed because it is active and the Ontario action is not, is also flawed. This is not a case where the defendant in a first-filed action attempts to defeat the plaintiff's choice of forum by commencing a second action in a foreign forum. *Compare McWane*, 263 A.2d at 282. Here, the plaintiffs brought essentially identical actions in two courts. They freely admit that they commenced the Ontario action as a "back-up" in the event that they lose in this Court. That the plaintiffs are concurrently seeking to maintain the benefits of two fora significantly reduces the weight to which the plaintiff's choice of forum might otherwise be entitled.

Based upon the foregoing analysis, I conclude that this action should not proceed. Only one factor even arguably favors the continuation of this action: the possible (although far from certain) applicability of Delaware law to one of the five pleaded claims. All other factors demonstrate that this action, if allowed to go forward, will occasion unnecessary hardship and inconvenience upon the defendant.

### E.  *A Dismissal vs. A Stay*

■ The question thus becomes whether this action should be dismissed or stayed. In my view, a stay is the more appropriate form of relief, because that will assure that the plaintiffs are not deprived of a forum. *Cf. Parvin,* 236 A.2d at 427. Ontario is the only other forum where the plaintiffs have pending claims against General Dynamics. Even in that forum, however, whether the Ontario court has jurisdiction over General Dynamics is a question not entirely free from doubt, because General Dynamics is contesting the jurisdiction of that court over it. Therefore, this action will be stayed, but on the condition that the plaintiffs may move to dissolve the stay should General Dynamics press its jurisdictional objection, and should the Ontario court determine that it does not have personal jurisdiction over General Dynamics.

### III.  THE RULE 11 MOTION

The defendant has also moved for the imposition of sanctions pursuant to Court of Chancery Rule 11. It argues that the plaintiffs either knowingly failed to disclose, or misled the Court with respect to, the status of their Ontario litigation.[10] Most pertinently, General Dynamics contends that the plaintiffs, in their answering brief on the motion to dismiss or stay, failed to disclose that they had brought a class action against General Dynamics in the Ontario Supreme Court. Because the Ontario action rests upon facts and allegations virtually identical to those pleaded in this case, and because the pendency of any such action is vitally important to the determination of a *forum non conveniens* motion, that omission is not trifling. A knowing misrepresentation of the precise status of that action would clearly constitute a violation of an attorney's duty of candor to this tribunal.

To restate the pertinent facts: on December 4, 1987 the plaintiffs filed a Notice of Action in the Supreme Court of Ontario against several defendants. General Dynamics was not included among them. On January 18, 1988, the Ontario court granted the plaintiffs leave to add other defendants, including General Dynamics. Although that order became effective February 1, 1988, the plaintiffs did not serve General Dynamics with the amended Notice of Action and Statement of Claim[11] until May 26, 1988. Plaintiffs' Delaware counsel argue that at the time they filed their brief on the motion to dismiss or stay, they knew that the plaintiffs had filed a Notice of Action, and later a Statement of Claim, in Ontario. They insist, however, that they did not know that their Ontario action had been filed against General Dynamics. Counsel also contend that because they had not yet received General Dynamics' reply brief, which was filed on June 20, 1988, any omissions or misstatements of facts in their brief were at most a product of a communication mishap.

■ Under Rule 11, "the signature of an attorney or party [on any paper filed with the Court] constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowl-

10. The defendant claims that three of the plaintiffs' assertions were false or misleading.
     (1) "There is no pendency of a similar action in another jurisdiction,"
     (2) "There is no other jurisdiction in which General Dynamics is litigating the instant claims on a class-wide basis in Canada," and
     (3) "There is no pendency in any jurisdiction of a prior filed action involving substantially the same parties."

11. This Court is advised that Ontario Rules of Civil Procedure provide for two methods of commencing a civil action: a Statement of Claim (complaint) and a Notice of Action. To formally commence the action, both the Notice of Action and Statement of Claim must be served upon the defendants.

edge, information, and belief formed after reasonable inquiry it is well grounded in fact...." The Rule applies to all papers filed during the course of the litigation, and has been interpreted to require the attorney of record who signs the pleading, motion, or other paper to conduct a reasonable inquiry into the operative facts and law cited in the pleading, motion, or other paper. The reasonableness of inquiry is judged objectively. *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 873 (5th Cir.1988); *Zuniga v. United Can Co.,* 812 F.2d 443, 452 (9th Cir.1987); *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157 (3rd Cir.1986); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253 (2nd Cir. 1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).[12]

■ Moreover, because the Rule now states that if a party violates the rule, the Court "shall impose ... an appropriate sanction," the Court no longer has discretion to decline to impose sanctions. *Thomas,* 836 F.2d at 876; *Dubisky v. Owens,* 849 F.2d 1034, 1036 (7th Cir.1988) (citation omitted). Discretion exists only with respect to the nature and extent of the sanctions. *Thomas,* 836 F.2d at 877; *Lieb,* 788 F.2d at 157.[13]

■ As earlier noted, plaintiffs' counsel urge that they did not violate Rule 11, because at the time they filed their answering brief they did not know that General Dynamics had been added as a defendant in the Ontario action. But even if that were accurate, plaintiffs' counsel did know that the Ontario action was pending. They were under a duty to conduct a reasonable inquiry to determine the identity of those persons whom their clients had sued, before representing to this Court that General Dynamics was not a defendant in the

Ontario action. At the least, the Rule's mandate of a reasonable inquiry required that the plaintiffs' counsel request the plaintiffs, or plaintiffs' Canadian counsel, to review the answering brief to verify the accuracy of its representations in that regard.[14] The plaintiffs should also have informed their Delaware attorneys about any changes in the status of the Ontario action.[15] That would have required little effort and expense on the part of plaintiffs and their counsel. I am therefore constrained to find that the plaintiffs and their counsel violated Rule 11.

The Court takes no pleasure in reaching that conclusion, or in imposing sanctions, but it is mandated to do so. However, the sanctions must be appropriate in the circumstances. Here the violation was one of omission, not of commission, and it appears that the misstatements in plaintiffs' brief could have been voluntarily rectified had the defendant brought this matter to the attention of plaintiffs' counsel before proceeding formally under Rule 11. Under these circumstances, it is appropriate that the plaintiffs be required to pay the defendant's reasonable expenses in prosecuting the motion, but not to exceed $1,000.

Counsel will submit an appropriate form of order implementing the rulings made herein.

---

12. The parties have cited no Delaware cases interpreting the Rule since it was amended to impose a reasonable inquiry requirement. The cited federal cases, are, however, instructive and persuasive.

13. Rule 11 permits the Court to order a party found to have violated Rule 11 to pay his opponent the "reasonable expenses incurred because of the filing of the pleadings, motion or other paper, including a reasonable attorney's fee."

14. This is especially true when there were several actions or proceedings occurring at different speeds and in several locations.

15. The plaintiffs' counsel argue that this situation arose as a result of an internal miscommunication. If that were a valid excuse, however, Rule 11 would be a dead letter. *See generally Thomas,* 836 F.2d 866 (5th Cir.1988).