# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| GLOBALTRANZ ENTERPRISES, INC., | ) | |
| | ) | |
| | ) | C.A. No. N19C-09-144 MAA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PNC BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: February 21, 2020
Decided: June 25, 2020

*Upon Defendant PNC Bank, National Association's*
*Motion to Dismiss Plaintiff's Complaint:*
***Granted***

## <u>MEMORANDUM OPINION</u>

Sabrina M. Hendershot, Esq. and Donna L. Culver, Esq., MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, Delaware, Anthony J. Dutra, Esq. and Neal L. Wolf, Esq., HANSON BRIDGETT LLP, San Francisco, California, *Attorneys for Plaintiff*.

Jose F. Bibiloni, Esq., BLANK ROME LLP, Wilmington, Delaware, John E. Lucian, Esq., BLANK ROME LLP, Philadelphia, Pennsylvania, *Attorneys for Defendant*.

**Adams, J.**

Pending before the Court is PNC Bank, N.A.'s ("PNC") Motion to Dismiss the Complaint. The Motion requires the Court to examine whether California law allows unjust enrichment claims by unsecured creditors against secured creditors under the particular circumstances presented here. For the reasons stated herein, the Court finds that Plaintiff GlobalTranz, Inc. ("GlobalTranz") has failed to state a claim for unjust enrichment under California substantive law. The Court will, therefore, grant PNC's Motion to Dismiss.

## Facts and Procedural Background

Unless otherwise stated, the Court accepts as true the following facts alleged in the Complaint for the purpose of reviewing the Motion to Dismiss under Rule 12(b)(6).[1] Plaintiff GlobalTranz is a freight brokerage company incorporated in Delaware. Defendant PNC is also incorporated in Delaware. Kraco Enterprises, LLC ("Kraco"), a now-defunct Illinois automobile accessory company headquartered in California, was one of GlobalTranz's customers from December 2015 until Kraco's breakup in 2018. PNC was one of Kraco's secured creditors during the time GlobalTranz provided services to Kraco.

GlobalTranz contracted with various freight carriers to transport and deliver Kraco's products from Kraco's facilities in California to distributors that purchased

---

[1] *See Bowden v. Pinnacle Rehabilitation and Health Center*, 2015 WL 1733753, at *1 (Del. Super. April 8, 2015); *Stayton v. Clariant Corp.*, 10 A.3d 597, 601 (Del. 2010).

2

the products from Kraco. GlobalTranz paid the underlying freight carriers directly and billed Kraco for these services. GlobalTranz provided Kraco about $800,000 in contracted services between January 1, 2018 and May 2, 2018. GlobalTranz alleges that it has not been paid for these services.

GlobalTranz alleges that PNC was spearheading the corporate liquidation and breakup of Kraco in early 2018 without GlobalTranz's knowledge. GlobalTranz further alleges that PNC received tens of millions of dollars in proceeds either by diverting payments made to Kraco by distributors on shipments brokered by GlobalTranz or by retaining the proceeds when Kraco's assets were sold off, depriving Kraco's ability to pay for the services GlobalTranz performed during the liquidation. These services allegedly were "essential" to the liquidation and provided revenue from which PNC paid itself to GlobalTranz's detriment.

From January 1, 2018 through May 2, 2018, PNC "knew or should have known" that GlobalTranz was providing freight brokerage services to Kraco. PNC also "knew or should have known" that Kraco's values upon liquidation would be higher if GlobalTranz provided those services, and even higher if Kraco did not pay GlobalTranz for the services. PNC "acquiesced" in GlobalTranz's provision of those services to Kraco and/or "encouraged" Kraco to obtain services from GlobalTranz, without disclosing the poor financial condition of Kraco. If PNC had foreclosed on its security interest prior to or during the time that GlobalTranz was

3

providing services to Kraco, PNC would have had to incur these expenses itself. GlobalTranz was the "unwitting conduit" by which PNC generated cash flow to pay itself to GlobalTranz's detriment.

GlobalTranz alleges that because PNC obtained the proceeds from Kraco's liquidation and breakup, PNC knowingly accepted the benefit of GlobalTranz's services and is obligated to pay for those services in order to "avoid injustice." According to GlobalTranz, an implied-in-law contract existed between PNC and GlobalTranz, under which GlobalTranz performed all of its obligations. The services GlobalTranz provided substantially benefitted PNC to GlobalTranz's detriment. GlobalTranz alleges that PNC breached the implied-in-law contract by not paying GlobalTranz for its services. GlobalTranz alleges damages in the amount equal to the value of the services provided to Kraco between January 1, 2018 and May 2, 2018.

GlobalTranz filed the Complaint on September 16, 2019 against PNC Bank, N.A. ("PNC") alleging breach of an implied covenant and unjust enrichment. PNC filed its Motion to Dismiss on October 30, 2019 pursuant to Delaware Superior Court Civil Rule 12(b)(6) for failure to state a claim, arguing that an unsecured creditor cannot assert a claim for unjust enrichment against a secured creditor. The Court held oral argument on the pending Motion to Dismiss on February 21, 2020.

4

<u>**Analysis**</u>[2]

## I.    California substantive law applies to the present action.

The Court must now determine the appropriate choice of law.[3] The first step in Delaware's conflict of law analysis is to determine whether there is an actual conflict.[4] In making this determination, "Delaware state courts answer a single and simple query: does the application of the competing laws yield the same result?"[5]

PNC argues that the Court does not need to make a choice of law determination in this case because there is no actual conflict between the unjust enrichment elements under Delaware law and California law. The key issue here, however, is the relationship between unjust enrichment and UCC Article 9.

---

[2] Although not raised in briefing on the Motion to Dismiss, during oral argument, the parties made arguments regarding whether this Court had subject matter jurisdiction for GlobalTranz's unjust enrichment claim. The Court finds that it has subject matter jurisdiction for the claims made in this action because GlobalTranz is seeking compensatory monetary damages only. *Prospect Street Energy, LLC v. Bhargava*, 2016 WL 446202, at *8 (Del. Super. Jan. 27, 2016). *See also Grace v. Morgan*, 2004 WL 26858, at *3 (Del. Super. Jan. 6, 2004) (holding that the Superior Court has subject matter jurisdiction over unjust enrichment claims when a plaintiff only seeks "money damages in order to be made whole").

[3] *See Landis v. Science Management Corp.*, 1991 WL 19848, at *3 (Del. Ch. Feb. 15, 1991) (citing *Hurst v. General Dynamics Corp.*, 583 A.2d 1334 (Del. Ch. 1990)); *Pharmathenes, Inc. v. Siga Technologies, Inc.*, 2008 WL 151855, at *6 (Del. Ch. Jan. 16, 2008) (citing *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991); *Nat'l Acceptance Co. of Cal. v. Mark S. Hurm., M.D., P.A.*, 1989 WL 70953, at *2 (Del. Super. June 16, 1989)). *See* Restatement (Second) of Conflicts of Laws §§ 6, 221.

[4] *Caballero v. Ford Motor Company*, 2014 WL 2900959, at *2 (Del. Super. June 24, 2014).

[5] *Id.*

5

California law provides certain exceptions from the general rule of its Article 9 priority scheme. GlobalTranz alleges that its claim against PNC falls under these exceptions that allow an unsecured creditor to bring an unjust enrichment claim against a secured creditor.

At oral argument, counsel for PNC suggested that "the reason there is a dearth of [Delaware] case law that preempts the Uniform Commercial Code, it is because the Uniform Commercial Code is a comprehensive statutory scheme that's designed to allow credit markets to operate smoothly without interference from claims of junior or subordinate creditors like the plaintiff."[6] Delaware law, unlike California law, does not provide a framework under which an unsecured creditor may pursue an unjust enrichment claim against a secured creditor. The differences in how each jurisdiction handles unjust enrichment claims under the circumstances presented here is sufficient to result in different outcomes depending on which jurisdiction's substantive law applies. Therefore, the Court finds that an actual conflict exists and will complete a conflict of law analysis.

Delaware courts apply the "most significant relationship" test in determining which jurisdiction's substantive law to apply.[7] The Restatement (Second) of

---

[6] Tr. 10:20–11:4.

[7] *Landis*, 1991 WL 19848, at *3 (citing *Hurst*, 583 A.2d 1334); *Pharmathenes*, 2008 WL 151855, at *6 (citing *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991); *Nat'l Acceptance Co*, 1989 WL 70953, at *2). *See* Restatement (Second) of Conflicts of Laws §§ 6, 221.

Conflicts of Laws § 221 sets forth the factors to consider in making this determination in an unjust enrichment case:

> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
> (b) the place where the benefit or enrichment was received,
> (c) the place where the act conferring the benefit or enrichment was done,
> (d) the domicil residence, nationality, place of incorporation and place of business of the parties, and
> (e) the place where a physical thing, such as land or chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.[8]

The relationship between GlobalTranz and PNC stems from their dealings with Kraco. This involved GlobalTranz's provision of transportation of products from Kraco facilities in California to distributors, which GlobalTranz alleges was for PNC's benefit because these are services PNC would have had to arrange and pay for itself in order to complete the liquidation. The first factor weighs in favor of applying California law because California is the "place where the relationship between [PNC and GlobalTranz] was centered." The second and third factors also weigh in favor of applying California law for the same reasons. The place "where the act conferring the benefit or enrichment" was California, where GlobalTranz provided its transportation services. The benefit was also received in California,

---

[8] Restatement (Second) of Conflicts of Laws § 221.

where the products were transported from Kraco facilities and where PNC liquidated Kraco.

The only factor that does not weigh in favor of applying California substantive law is the fourth factor. Kraco is not a party to this action and the fact that it was headquartered in California has no bearing on the analysis of this factor. GlobalTranz and PNC are both incorporated in Delaware. GlobalTranz's principal place of business is in Arizona. PNC's principal place of business is in Pennsylvania. This factor weighs most in favor of applying Delaware substantive law.

The fifth factor, "the place where a physical thing […] was situated at the time of the enrichment," weighs in favor of applying California law. As discussed, GlobalTranz alleges that the unjust enrichment occurred when it provided transportation services for Kraco products from Kraco's California facilities. The "physical thing[s]" in this case are the automobile accessory products GlobalTranz was transporting, which were located in California at the time the services were provided, which is when GlobalTranz alleges the enrichment occurred.

In consideration of the factors under the Restatement (Second) Conflicts of Law § 221, the Court will apply California substantive law to this matter.

8

**II.** **GlobalTranz fails to state a claim for unjust enrichment under California substantive law.**

A. Delaware Superior Court Civil Rule 12(b)(6)

On a motion to dismiss under Delaware Superior Court Civil Rule 12(b)(6), the Court "will accept all well-pleaded factual allegations in the complaint as true, and will accept even vague allegations as 'well-pleaded' if they provide defendants notice of a claim."[9] The Court "will draw all reasonable inferences in favor of the plaintiff" and will deny the motion "unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[10]

The Court, however, is only required to accept "those reasonable inferences that logically flow from the face of the complaint" and not "every strained interpretation of the allegations proposed by the plaintiff."[11] The Court also will not accept as true conclusory statements unsupported by specific factual allegations.[12]

B. Unjust Enrichment Under California Law

The elements of unjust enrichment under California law are the "receipt of a benefit and unjust retention of the benefit at the expense of another."[13] The benefit

---

[9] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings, LLC*, 27 A.3d 531, 536 (Del. 2011).

[10] *Id.*

[11] *In re General Motors (Hughes) Shareholder Litig.*, 897 A.2d 162, 168 (Del. 2006) (internal citations omitted).

[12] *Id.*

[13] *Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238 (2018) (citing *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000)).

"may take any form, direct or indirect.  It may consist of services as well as property.  A saved expenditure or a discharged obligation is no less beneficial to the recipient than a direct transfer."[14]

PNC argues that any benefit it derived from GlobalTranz's services to Kraco was not "unjust" because PNC was a secured creditor of Kraco under California's version of UCC Article 9.  GlobalTranz alleges that its claim falls under the exceptions under California law allowing for an unsecured creditor to pursue an unjust enrichment claim against a secured creditor.

The exceptions under California's UCC Article 9 priority scheme are quite narrow.  The Supreme Court of California has not yet ruled on the issue of whether California permits unjust enrichment claims by unsecured creditors against secured creditors.  The California Court of Appeal, however, has recognized unjust enrichment claims brought by unsecured creditors against secured creditors since the late 1980's when the court decided *Producers Cotton Oil Co. v. Amstar Corp.*[15]

---

Although there appears to be some confusion and disagreement as to whether in California a court may recognize a claim for unjust enrichment as a separate cause of action, *see Nordberg v. Trilegiant Corp.*, 445 F.Supp.1082, 1100 (N.D. Cal. 2006), *SewChez Int'l Ltd. v. CIT Group/Commercial Services, Inc.*, 2007 WL 9753114, at *7 (C.D. Cal. Sept. 20, 2007), defendant PNC makes no attempt to challenge the existence of such a claim, but rather challenges its applicability to the facts of this case.

[14] *Professional Tax Appeal*, 29 Cal. App. 5th at 238 (quoting Restatement (Third) Restitution and Unjust Enrichment, § 1, comm. d, p. 7).

[15] 197 Cal. App. 3d 638, 242 Cal. Rptr. 914 (1988).

In order to overcome California's Article 9 priority scheme, a plaintiff must show "something more" than gain to the secured creditor.[16] This "something more" only occurs under "unusual circumstances."[17] Plaintiff is required to show these unusual circumstances are present because of either: (1) certain conduct by the secured creditor in relation to the transaction; or (2) the nature of the unsecured creditor's contribution to the collateral, such as the preservation of perishable food products.[18] A review of the applicable case law interpreting these limited exceptions is helpful to put GlobalTranz's claim in context.

In *Producers Cotton*, the California Court of Appeal held that "when a party possessing a security interest in a crop and its proceeds has knowledge of and acquiesces in expenditures made which are *necessary* to the development of the crop, and ultimately benefits from the expenditures, a party who, through mistake, pays such costs without first obtaining subordination, is entitled to recover."[19] The main issue in the present case is the application of *Producers Cotton* and its progeny to the facts alleged in the Complaint. PNC argues that the holding in *Producers Cotton* is limited to agricultural contexts involving perishable crops. GlobalTranz

---

[16] *Knox v. Phoenix Leasing, Inc.*, 29 Cal. App. 4th 1357, 1365, 35 Cal. Rptr.2d 141 (1994).
[17] *Knox*, 29 Cal. App. 4th at 1359.
[18] *Id.* at 1365.
[19] *Producers Cotton*, 197 Cal. App. 3d at 660.

11

argues that California law does not specify such a limitation and that the present case is not distinguishable from *Producers Cotton* on that point.

Soon after the decision in *Producers Cotton*, the Supreme Court of Colorado in *Ninth District Production Credit Ass'n v. Ed Duggan, Inc.*[20] addressed the issue of "whether a creditor that holds a perfected security interest in collateral can be held liable to an unsecured creditor based on a theory of unjust enrichment for benefits that enhance the value of the collateral."[21] *Duggan* also involved the agriculture business, where Ed Duggan, Inc., an unsecured creditor of a failing cattle feedlot business, sued Ninth District Production Credit Association, a creditor with a security interest in the proceeds of the feedlot's accounts receivable, for compensation for corn delivered to the feedlot business.[22]

The *Duggan* court surveyed case law from throughout the country, including *Producers Cotton*, and found that, with regard to the applicability of unjust enrichment in security interest cases, "this question cannot be answered categorically."[23] The court noted a common thread in the cases it reviewed in which the unjust enrichment claims were unsuccessful. "In each, the secured creditor had no more than general knowledge that an unsecured creditor was supplying goods to

---

[20] 821 P.2d 788 (Colo. 1991).
[21] *Id.* at 793.
[22] *Id.* at 790.
[23] *Id.*

12

the debtor."[24]  "There were no facts to indicate that the secured creditor initiated or encouraged the transaction by which the unsecured creditor enhanced the value of the secured collateral when the unsecured creditor supplied goods or services to the debtor."[25]

Importantly, the *Duggan* court recognized that the central point of distinction was "the extent to which the secured creditor was involved in the transaction by which the unsecured creditor supplied goods or services that enhanced the value of the secured collateral."[26]  When a secured creditor does not itself initiate or encourage the transaction creating the unsecured obligation giving rise to the unjust enrichment claim, such a claim "cannot be supported."[27]  The *Duggan* court held that there was sufficient evidence regarding the secured creditor's "active role in creating a perception that the corn would be paid for, its failure to inform the parties otherwise, and the need for the corn to feed the cattle in order to produce accounts receivable subject to [its] security interest."[28]

---

[24] *Id.*

[25] *Id.* at 796

[26] *Id.* at 797.

[27] *Id.* at 797.  Subsequent cases indicate that a plaintiff is not required to allege wrongdoing in order to show that a defendant initiated or encouraged the transaction. *See Frontier Station, Inc. v. Kloiber Real Estate Holdings, LLC*, 2019 WL 4643683 (D. Colo. Aug. 12, 2019); *Bluebonnet Warehouse Co-op v. Bankers Trust Co.*, 89 F.3d 292 (6th Cir. 1996).

[28] *Duggan*, 821 P.2d at 798.

In *Knox v. Phoenix Leasing Inc.*,[29] the California Court of Appeal reaffirmed the availability of unjust enrichment claims against secured creditors under certain limited circumstances. In *Knox*, the seller of wine barrels brought an action for restitution against the buyer's secured creditor. Although the *Knox* court acknowledged the availability of a remedy of unjust enrichment, the court noted that "[r]ecovery is clearly the exception, not the norm, and is subject to stern limitations."[30]

The *Knox* court began its analysis by noting that because Article 9 establishes a comprehensive scheme to afford "maximum protection to the secured creditor who has followed its provisions," a secured creditor "which has complied with all relevant code requirements to perfect its security interest, should therefore start with something like a presumption in its favor."[31] The court recognized that "victory for a secured creditor is not an immutable law of nature;" however, "something more" than mere gain to the secured creditor "is required to displace the creditor's favored position."[32] This "something more" will only occur under "unusual circumstances" and "is either conduct by the secured creditor or the nature of the unsecured

---

[29] *Knox*, 29 Cal. App. 4th at 1357.
[30] *Id.* at 1361.
[31] *Id.* at 1364.
[32] *Id.* at 1365. In other words, "Simply pointing to the benefit realized by the secured creditor will not suffice." *Id.* at 1360, 1365.

14

creditor's contribution to the collateral."[33]  Under the reasoning in *Knox*, the Court should look to whether the secured creditor had an "active hand" in promoting the transaction in question.[34]

The *Knox* court also recognized the unusual circumstances regarding collateral that is perishable and why those circumstances could support a claim for unjust enrichment against a secured creditor.[35]  "When an unsecured creditor provides goods or services that are necessary to preserve the collateral, this is an expense the secured creditor would ordinarily incur as part of the duty to use 'reasonable care in the custody and preservation of collateral in his possession.'"[36] In such a case – like in *Producers Cotton* and *Duggan* – "the unsecured status of the creditor appears less important than the fact that the secured creditor directly benefits from expenditures the creditor is spared having to make on its own behalf."[37]  On the other hand, "[m]atters become less clear when the unsecured creditor's expenditures are not essential but merely useful, in the sense that the collateral available for liquidation is being increased."[38]

---

[33] *Id.* at 1365.
[34] *Id.*
[35] *Id.* at 1366.
[36] *Id.*
[37] *Id.*
[38] *Id.*

Taking all of this into account and finding that Phoenix's conduct did not amount to fraud, the court looked to other allegations to see if they could fit within the unjust enrichment framework.[39] The court noted that the contract for wine barrels was between Knox and the failed business (Domaine), the contract made no reference to Phoenix and it was executed prior to the Domaine-Phoenix relationship. The wine barrels were ordered by Domaine, shipped to Domaine and Knox initially looked to Domaine for payment. Moreover, the fact that Knox paid for the first shipment with a check from Phoenix did not establish that Phoenix encouraged the deal.

The court further found that the barrels provided by Knox "were not necessary to preserve the collateral covered by Phoenix's security interest in Domaine's 'after acquired' property. The mere fact that the secured collateral was enhanced by the addition of the barrels [did] not support liability in these circumstances."[40] The court, therefore, found that the plaintiff did not state a claim for unjust enrichment. As the court held, while common sense would ordinarily dictate that because "Knox provided barrels; Phoenix ended up with the barrels[,] Phoenix should therefore pay Knox for their value […] Article 9…compels a different conclusion."[41] "Phoenix

---

[39] *Id.* at 1367.
[40] *Id.* at 1368.
[41] *Id.*

complied with statutory provisions intended to immunize secured creditors from such claims in all but the rarest of cases."[42]

The United States District Courts for the Eastern District and Central District of California have also addressed the interaction between unjust enrichment and the Article 9 priority scheme in *Starlite Development v. Textron*[43] and *SewChez Int'l Ltd. v. CIT Group/Commercial Services, Inc.*,[44] respectively. Although both cases are unpublished and are not binding precedent on California substantive law, they are persuasive authority and inform the Court's analysis in the present case.[45]

In *SewChez*, the United States District Court for the Central District of California held that, while California law acknowledges "the possibility of claims for unjust enrichment against a secured creditor by an unsecured creditor when the unsecured creditor 'provides goods or services that are necessary to preserve the

---

[42] *Id. See also Atascadero Factory Outlets, Inc. v. Augustini & Wheeler LLP*, 83 Cal. App. 4th 717, 721, 99 Cal.Rptr.2d 911(2000) (affirming the narrow application of unjust enrichment to the UCC priority scheme, and that it only applies in "exceptional situations" and "[w]here a secured creditor does not itself initiate or encourage the transaction that creates the unsecured obligation giving rise to the unjust enrichment claim, retention of any benefit realized by the secured creditor without compensating the supplier is not unjust.") (quoting *Duggan*, 821 P.2d at 797).

[43] 2008 WL 2705395 (E. D. Cal. July 8, 2008).

[44] 2007 WL 9753114 (C. D. Cal. Sept. 20, 2007).

[45] Under California law, "[w]hile unpublished opinions from the court of appeal or superior court appellate division may not be cited or relied upon, unpublished federal cases 'are citable as persuasive, although not precedential, authority.'" *Martinez v. California Pizza Kitchen*, 30 Cal. App. 5th Supp. 14, 20 (2018) (citing *Pacific Shore Funding v. Lozo* (2006) 138 Cal. App. 4th 1342, 1352).

collateral," this was inapplicable to the case before the court.[46]  The plaintiff, a Taiwanese manufacturer of swimwear, sold swimwear and related items to a company named Beach Patrol, Inc. on an open book account basis.[47]  By July 2004, Beach Patrol owed SewChez nearly six million dollars and SewChez, therefore, insisted that all future shipments of goods to Beach Patrol be paid by letter of credit.[48]

The defendant, CIT Group/Commercial Services, Inc., Beach Patrol's lender, obtained letters of credit for Beach Patrol from co-defendant JPMorgan Chase Bank, N.A.[49]  Chase and CIT initially paid SewChez when SewChez presented late or discrepant documents, but then subsequently refused to waive discrepancies in documents ultimately submitted in connection with three letters of credit.[50]  In total, SewChez was denied payment on nearly two million dollars of goods shipped to Beach Patrol.[51]  SewChez brought claims for, among other things, unjust enrichment.[52]

The court found that "plaintiff's shipment of goods [did not] in any way preserve[] CIT's secured interest in Beach Patrol's inventory.  Beach Patrol's

---

[46] *SewChez*, 2007 WL 9753114, at *8 (C.D. Cal. Sept. 20, 2007) (citing *Knox*, 29 Cal. App. 4th at 722).

[47] *Id.* at *1.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* at *7.

inventory was not perishable in the manner of foodstuffs, for instance. Hence, Plaintiff's actions were in no way necessary to prevent the expiration of Beach Patrol's inventory. Instead, Plaintiff's shipments merely augmented the inventory of goods already held by Beach Patrol."[53] Although not discussed in the *SewChez* court's analysis, it is important to note that the plaintiff also did not present any facts indicating conduct by the defendant that would bring the circumstances of the case under the reasoning in *Knox*.[54]

In *Starlite*, the United States District Court for the Eastern District of California found that the unsecured-creditor plaintiff, Starlite Development, which sold calendars to Turner Company, sufficiently stated a claim for unjust enrichment.[55] Turner Company eventually stopped paying for the calendars it had already ordered.[56] Turner Company was nearly insolvent and Starlite discovered that Textron was Turner Company's primary lender.[57] The plaintiff alleged that Textron closely monitored the finances and business operations of Turner Company beginning in January 2006 when Textron placed an agent on site at Turner

---

[53] *Id. See also Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F. Supp.2d 1044, 1088 (E.D. Cal. 2003) ("Plaintiffs, as unsecured creditors, did not provide goods or services that were necessary to preserve the collateral," and therefore could "not show equities that override [the secured creditor's] claim of priority as a perfected secured creditor under the UCC priority scheme.").

[54] *See SewChez*, 2007 WL 9753114, at *7–8.

[55] *Starlite*, 2008 WL 2705395 at *31.

[56] *Id.* at *1.

[57] *Id.*

Company's offices.[58] The plaintiff also alleged that the defendants engaged in fraud and misrepresentation, including representing falsely to Starlite that Textron and Turner Company intended to repay Starlite for the calendars Turner Company ordered and for making pre-shipping payments to induce Starlite to fulfill orders Textron and Turner Company never intended to pay in full.[59]

After a review of *Producers Cotton*, *Duggan* and *Knox*, the court concluded, without much analysis, that a factual issue existed regarding whether Starlite provided any goods or services necessary to preserve collateral or whether Textron engaged any of the conduct alleged, other than to "resort to remedies permitted by the UCC and this Court."[60] While the *Starlite* court did not provide much reasoning in its decision, the facts set forth illustrate some aspects of the circumstances contemplated by the other *Producers Cotton* progeny cases.

Based on the case law interpreting *Producers Cotton*, GlobalTranz has failed to state a claim for unjust enrichment under California law. GlobalTranz's main argument in opposition to the Motion to Dismiss is that because this case is at the early pleading stage, it should be entitled to discovery on its unjust enrichment claim. Although this case is at the early pleading stage and Delaware's Rule 12(b)(6)

---

[58] *Id.* at *3.
[59] *Id.* at *3, 30.
[60] *Id.* at *31.

provides a low threshold, the Court is not required to accept conclusory allegations such as those contained in the Complaint here.

No matter how much discovery is afforded to GlobalTranz, it will not change the fact that GlobalTranz began providing freight broker services to Kraco in or around December 2015 – well before PNC's alleged "spearheading" of the breakup of Kraco in 2018.[61]  GlobalTranz therefore cannot allege that PNC in any way initiated the transaction.[62]  In another attempt to fit within the narrow framework of an unjust enrichment claim, GlobalTranz alleges that in early 2018, when PNC allegedly began to "spearhead[] and facilitate[] the corporate liquidation" of Kraco, Kraco stopped paying GlobalTranz.[63]  GlobalTranz also alleges that PNC "acquiesced in GlobalTranz's provision of those services to Kraco and/or encouraged Kraco to obtain those services from GlobalTranz."  These allegations are conclusory and unsupported by facts.[64]  The Court is not required to accept such allegations as true on a motion to dismiss and the Court declines GlobalTranz's invitation to do so here.

Allegations of PNC's "mere acquiescence" to the actions of GlobalTranz and the purported enhancement to the collateral value of Kraco by GlobalTranz's freight

---

[61] Compl. ¶ 7.
[62] *See Knox*, 29 Cal. App. 4th at 1365-66.
[63] Compl. ¶¶ 9-11.
[64] *See*, *e.g.*, *In re General Motors (Hughes) Shareholder Litig.*, 897 A.2d at 168.

21

broker services are not sufficient to support a claim for unjust enrichment under California law.[65] "Acquiescence liability, because it would upend [A]rticle 9's interlocking notice-filing and priority provisions, cannot be accepted."[66] "Basing unjust enrichment liability on acquiescence would turn the filing system on its head, destroying existing creditors' reliance on that system and substituting a prospective creditor's duty to check with a new duty to warn and disclaim imposed on existing creditors."[67]

Finally, GlobalTranz did not provide goods or services that were necessary to preserve the collateral. The situation here, where GlobalTranz provided freight brokerage services to Kraco for many years prior to PNC's involvement, is most closely related to the circumstances in *Knox* and *SewChez*. The freight brokerage services were not necessary to preserve the collateral covered by PNC's security interest and the "mere fact that the secured collateral was enhanced" by these services "does not support liability under these circumstances."[68] As in *SewChez*, Kraco's inventory "was not perishable in the manner of foodstuffs," and "[i]nstead, Plaintiff's [freight brokerage services] merely augmented the inventory of goods already held by" Kraco.[69]

---

[65] *Knox*, 29 Cal. App. 4th at 1366.
[66] *Id.* at 1367.
[67] *Id.*
[68] *Id*. at 1368.
[69] *SewChez*, 2007 WL 9753114, at *8.

A secured creditor who has satisfied the statutory requirements for protecting its interest is entitled to a rebuttable preference for payment against an unsecured creditor.[70] This preference is reinforced where an unsecured creditor has various non-statutory protections and fails to use them.[71] "As courts and commentators have noted, the unsecured creditor could have (1) demanded cash payment on delivery, (2) perfected a purchase money security interest, (3) checked with the appropriate governmental office to determine if the debtor had already granted a security interest posing a possible threat to repayment, or (4) obtained a secured creditor's agreement to subordinate its priority."[72] GlobalTranz had several options to ensure payment for the services it provided to Kraco and, apparently, failed to take advantage of these options.

GlobalTranz provides nothing more than conclusory statements in language mirroring the standards set forth in the *Producers Cotton* progeny cases. Without providing any factual support, Plaintiff cannot meet Delaware's pleading threshold under Rule 12(b)(6). Essentially, the most the Court can glean from Plaintiff's *factual* allegations is that PNC knew about the transactions between GlobalTranz and Kraco. This is not sufficient, under the reasoning of any of the cases discussed above, to state a claim for unjust enrichment against Defendant. Plaintiff's services

---

[70] *Knox*, 29 Cal. App. 4th at 1364.
[71] *Id.*
[72] *Id.*

were not necessary to preserve the automobile accessory products involved in its transaction with Kraco. Plaintiff did not allege any involvement by Defendant in its transaction with Kraco, or any conduct at all, beyond what is permitted and expected under Article 9. No facts alleged in the Complaint support a finding of fraud, misrepresentation, initiation, encouragement, or any other conduct by PNC that could give way to the "unusual circumstances" required in order for an unsecured creditor to state a claim for unjust enrichment against a secured creditor.

## CONCLUSION

For the foregoing reasons, PNC's Motion to Dismiss is **GRANTED**. **IT IS SO ORDERED**.

_____
Meghan A. Adams, Judge